SAVOY, Judge.
This is a suit sounding in tort filed by-plaintiff, a femme sole, having been legally divorced from her husband, against defendant as the insurer of a car owned by J. B. Valin and driven by his minor son, Charles Valin, resulting from a collision which occurred in the City of Opelousas, Louisiana, on the night of April 21, 1960, at the intersection of Vine and South Liberty Streets, between a car driven by plaintiff and one driven by Charles Valin.
After a trial on the merits, plaintiff was awarded judgment against defendant in the sum of $4,048.00; $3,500.00 being allowed for personal injuries suffered by plaintiff resulting from the accident; $200.00 for damage to the car owned by plaintiff; and $348.00 for medical expenses incurred by plaintiff as a result of the above accident. From the judgment defendant was granted and perfected a suspensive appeal to this Court.
The evidence reflects that on the date of the accident plaintiff was driving her car in an easterly direction on Vine Street and the said Charles Valin was driving a car owned by his father in a southerly direction on South Liberty Street. Vine Street has the right-of-way over South Liberty Street. The right-of-way is granted by an ordinance of the City of Opelous-as. Stop signs were posted prior to and at the time of the accident on the west side of South Liberty Street. Vine Street is also a part of U. S. Highway 190 which traverses the City of Opelousas for its entire length, and is one way in an easterly direction.
At the time of the trial Charles Valin was dead. However, two (2) policemen for the City of Opelousas examined the accident shortly after its occurrence, and both testified that Charles Valin admitted to them he entered the intersection without stopping for the stop sign posted on South Liberty Street and without keeping a proper lookout. Under these facts, this Court is of the opinion that the sole and proximate cause of the accident, was the negligence of Charles Valin in entering the intersection without bringing his car to a stop position before attempting to enter Vine Street.
Counsel for defendant contends that the award made by the trial judge for personal injuries, property damage and medical expenses is excessive and should be reduced.
Plaintiff was examined by Dr. Emile K. Ventre, a general practitioner of Opelousas, Louisiana, on April 21, 1960. He found plaintiff to be suffering moderately severe contusions and bruises on the forehead and left forearm. However, her chief complaint was pain in the neck and shoulder. The doctor felt plaintiff had a whiplash syndrome and sprain of the cervical spine. X-rays were taken which were essentially negative, with the exception that the pictures showed loss of curvature and muscle spasm. Plaintiff received conservative treatment consisting of heat, diathermy, relaxants, analgesics, etc., and she showed improvement from the above treatment. Her symptoms were fairly severe for a period of approximately six (6) to eight (8) weeks. She returned to work. Plaintiff was seen by Dr. Ventre for a period of two (2) years with complaints referable to the neck and arm, but found these not severe enough to keep her from working. Dr. Ventre stated that in March of 1962 he had x-rays taken of plaintiff’s neck and found a post traumatic osteoarthritis involving the sixth (6th) and seventh (7th) cervical vertebrae. He said the second x-rays convinced him that plaintiff had suffered more injuries to the neck than he realized at the time of the initial injury. In 1960 he found no indication of any calcific spurring or arthritis in the cervical spine. During the March, 1962, visit plaintiff also complained of pain in the right arm and the fourth (4th) finger. Dr. Ventre felt that pain in the (4th) finger was indicative of some impingement of the nerve. He also found that plaintiff had suffered a moderately severe con *659 tusion of the forehead which left her with some skin depression and a mild deformity of the musculature of the forehead. The court examined plaintiff at the trial and found that the scar was not noticeable except on close observation. The doctor testified the length of the scar indentation to be about three (3) or four (4) centimeters (one centimeter being the equivalent of 0.3937 inch).
Rodney A. Carrier, who had an office adjacent to that of plaintiff’s employer, stated that her work was not as efficient after the accident as it was before. She was a secretary and her work required that she do typing.
Dr. Guy J. Dunning, Jr., an orthopedic surgeon residing in Lafayette, Louisiana, examined plaintiff at the request of defendant on two (2) occasions; the first being July 8, 1960, and the last time being February 9, 1962. On the first visit, Dr. Dunning made a physical examination of plaintiff and also x-rays were taken by a radiologist, and Dr. Dunning reviewed these films. The films were reported by the radiologist as showing a reversal of the cervical curve in the mid-aspect, and a slight tilt of the head toward the left. There were no fractures, no arthritis, and the disc spaces were not narrowed. Dr. Dunning disagreed with the finding of his radiologist and stated that in light of his clinical examination, he found evidence of malposi-tioning rather than any evidence of muscle spasm. Dr. Dunning said:
“It was my opinion that the patient probably had suffered some mild sprain to the right upper trapezius muscle which had subsided to a point of producing only some mild subjective complaints in the extremes of motion and to deep pressure. This had not prevented her from carrying out her duties as a secretary and I felt that there was no evidence of an orthopedic nature to produce no further temporary disability and no disability of a permanent nature. I didn’t feel that her complaints of headaches or nervousness were due to this injury as this pathology condition presented at this time.”
On the second examination Dr. Dunning made no x-rays and found nothing wrong with plaintiff. Dr. Dunning did not examine plaintiff for anything other than possible neck injuries.
In Little v. Safeguard Insurance Company, (La.App., 3 Cir., 1962), 137 So.2d 415, this Court said:
“ * * * Furthermore, awards made in similar cases should be considered by our courts, so that a degree of uniformity will be maintained to the end that awards will not be out of all proportion, one with the other. Landry v. Southern Farm Bureau Casualty Ins. Co., 125 So.2d 474 (3rd Cir.La. App.1960).”
The awards made in so-called whiplash injury cases were summarized in Cassreino v. Brown, (La.App., 4 Cir., 1962), 144 So. 2d 608, by the Senior Judge of this Court, Honorable Albert Tate, Jr., while sitting on the Fourth Circuit Court of Appeal.
Considering the cases cited in Cass-reino v. Brown, supra, and the additional injuries suffered by plaintiff to her forehead, arm and finger, we are of the opinion that the award made by the trial judge is neither inadequate or excessive.
Counsel next complains of the award made by the district judge to plaintiff for property damage to her vehicle. The only testimony on this phase of the case was that of Leo Lafleur. He testified that he was engaged in the garage repair works. Also that he was a Buick agent for approximately forty (40) years and specifically at the time of the accident in the instant case. Lafleur had serviced the 1949 Dodge sedan owned by plaintiff and involved in the accident of April 21, 1960. He placed the value of the car prior to the accident at approximately $250.00, *660 and having a salvage value of between $40.00 and $50.00. The trial court found the car to have a value of $207.00 prior to the accident, and a total loss after the accident, it having sold for $7.00 after the accident. Counsel for defendant complains that the award is excessive in that Lafleur placed the salvage value at from $40.00 to $50.00. It is apparent that both the trial judge and Lafleur reached the same results although usiifg different figures. No objection was made to the testimony of Lafleur at the trial of the case, and since the expert placed the damage to the Dodge at approximately $200.00, this Court will not disturb the ruling of the trial judge.
The last complaint made by counsel for defendant is as to medical expenses awarded plaintiff. Dr. Ventre’s statement of $333.00 for services rendered to plaintiff was introduced in evidence without objection. Likewise, a bill of St. Landry Clinic for x-rays in the sum of $15.00 was introduced in evidence without objection. Counsel for defendant takes the position that the statement of Dr. Ventre was not explained with sufficient certainty so as to show whether all of the items were for plaintiff or for plaintiff and a minor son who was in plaintiff’s car at the time of the accident.
In Bertoli v. Flabiano, (La.App., 1 Cir., 1959), 116 So.2d 76, 77, 79, the court held :
To preserve a party s right to urge error on appeal, it is necessary to make formal objection to admissibility or competency of evidence sought to be introduced (LSA-R.S. 13:4448) or to an incorrect charge (Code of Practice, Article 517). Likewise, it seems to us, in the absence of objection to allegedly improper argument, the trial court is afforded no opportunity to prevent or correct the alleged error, and the plaintiff must be deemed to have waived his right to complain of the alleged impropriety upon appeal. This is the rule in the other American jurisdictions. See 4A C.J.S. Appeal & Error § 794.”
In view of the holding in Bertoli v. Fla-biano, supra, and in the absence of any objection to the introduction of the statement of Dr. Ventre, this Court is of the opinion that the item of $348.00 for medical expenses is proper.
For the reasons assigned, the judgment of the district court is affirmed. Defendant to pay costs of this appeal.
Affirmed.