LANDRY, Judge.
This is an action in tort wherein plaintiff, Mrs. Cecile Rodriguez Batts, seeks damages from defendants, Patterson Truck Lines, Inc., Charles Joseph Boudreaux, employee of Patterson Truck Lines, Inc., and Travelers Insurance Company, liability insurer of the aforesaid employer, for personal injuries, loss of wages and medical expense sustained and incurred as the result of an automobile accident which occurred March 24, 1961, at the intersection of U. S. Highway 61 and Louisiana Highway 44 in the Town of Gonzales, Louisiana, when a 1954 model International truck and trailer belonging to defendant, Patterson Truck Lines, Inc., and operated by defendant, Boudreaux, ran into the rear of a 1959 Chevrolet automobile operated by plaintiff (but owned by her son, Lloyd Smith) while said latter mentioned vehicle was stopped at the aforesaid intersection in obedience to a traffic light.
After trial below judgment was rendered in faver of plaintiff awarding damages in the sum of $1,500.00 for personal injuries and special damages in the aggregate of $917.93, or a total of $2,417.93. From said adverse judgment defendants have appealed praying for a reduction in the award made plaintiff for personal injuries. Plaintiff has answered the appeal praying for an increase in amount allotted her for physical pain and suffering "and also making claim for lost wages denied by the court below.
Defendants’ liability is conceded, consequently the only issue before the court on this appeal is the question of quantum to which plaintiff may be entitled.
*99 Although the issue of liability is conceded, nevertheless, a brief narration of the circumstances surrounding the occurrence of the accident is believed necessary in that it sheds some light upon the nature and extent ■of plaintiff’s alleged injuries as will hereinafter appear.
On the date of the accident, plaintiff, a beautician approximately 56 years of age, was on her way to work. Following the collision plaintiff reported to her place of employment and worked the remainder of the day although she experienced considerable pain in her neck, back and arms. The following day, Saturday, plaintiff worked one-half day as usual but on Sunday she became worse in that, in addition to pain, she experienced a chill which caused her to remain in bed. She worked the next day, Monday, but was so discomforted she consulted her family physician, Dr. Clay Waguespack, Jr., on Tuesday, March 28, 1961.
Plaintiff’s chief complaint is of pain emanating from a “whip-lash type” injury of the cervical spine and of numbness and weakness of the arms, principally the right arm. In substance appellants maintain plaintiff sustained little or no injury as the result of the accident, consequently the award of the trial court for physical pain and suffering is excessive and should be reduced. On the ■other hand appellee contends she has suffered severe, painful injury of the neck, hack and arms to such extent the judgment ■of the trial court is inadequate and should he increased
Plaintiff testified she became nervous immediately following the accident but reported to work that day because, at the time, she was unaware she had sustained any serious injury. She did not consult her physician, Dr. Waguespack, on the day of the accident because inquiry revealed he was out of town. Despite pain in her neck she worked the day of the accident and half the next day which was Saturday. On Sunday, however, she experienced a chill and began to feel pain in her arms, partie-ularly in the region of her elbows and most intensely in the vicinity of her right elbow. Although she suffered no cuts or bruises she observed swelling in her right arm near the elbow. On Tuesday, her day off, she consulted Dr. Waguespack. Approximately four weeks following the accident her condition became worse whereupon she was hospitalized by Dr. Means (to whom she was referred by Dr. Waguespack) for a period of five or six days. During her hospitalization she was placed in traction and thereafter wore a “collar” for a period of approximately three weeks. Following her injury she made frequent visits to Dr. Means during which she was given diathermy treatment and administered drugs. According to plaintiff, for ,a period of approximately three months following the accident she was unable to drive an automobile or attend to her personal needs. She could not bathe herself or fix her hair. During this period she lived with her sister who cared for her and attended to those personal needs which plaintiff could not fulfill. Her testimony is to the effect she suffered constantly from pain in her neck, shoulders, back and arms, particularly the right arm and elbow. She was unable to work for approximately three months following the accident as she became easily fatigued and lost the strength in her hands and arms to such extent she was constantly dropping things. She further complained of a feeling of numbness and loss of sensation in both arms which she likened to the feeling experienced when one strikes one’s “crazy bone”. Although she conceded the condition of her back was somewhat improved at the time of trial, she maintained the condition of her neck and arms had grown worse.
Dr. Waguespack, internist, testified plaintiff was a former patient in that he had seen plaintiff on six occasions preceding the date of the accident. On March 28, 1961, plaintiff consulted him for treatment for injuries to her neck, back and arms allegedly sustained in the accident of March 24, 1961. Plaintiff related she received the injuries when her parked vehicle was struck from *100 the rear by a heavy truck and trailer. Plaintiff informed him that although no part of her body was struck in the accident, she immediately began to suffer pain in her neck and had continued to experience pain in her neck, shoulders and the crown of her head. Shortly following the accident plaintiff began to suffer pain in both elbows and experienced a feeling which she likened to the sensation produced by a blow to the “crazy bone”. In addition, plaintiff noted swelling in the area of the right elbow. At the time of his examination Dr. Wagues-pack noted the swelling of the right elbow had subsided to considerable degree but palpation disclosed tenderness in antecubi-tal fossae of each arm which Dr. Wagues-pack explained is the “sink in front of the elbow”, — particular tenderness being found in the right antecubital fossae. Dr. Wag-uespack prescribed muscle relaxants and aspirin and also referred plaintiff to an orthopedist, Dr. Richard B. Means, Jr. Predicated upon his examination Dr. Waguespack diagnosed plaintiff’s condition as a whiplash injury but he was unable to account for the symptoms which plaintiff related regarding the condition of her elbows. On May 8, 1961, Dr. Waguespack again saw plaintiff at which time he considered her neck injury to have healed but he found plaintiff still complaining of elbow pain which symptom he could not explain.
Dr. Richard B. Means, Jr., Orthopedist, saw plaintiff March 28, 1961, by referral from Dr. Waguespack. Plaintiff narrated a history of pain immediately following the accident and numbness in both hands and elbows. Upon examination plaintiff was found to be free of objective symptoms of injury excepting tenderness of the neck and both elbows. Dr. Means found no muscle spasm and no impairment of range of motion in the cervical spine. X-ray revealed no fractures but, because of plaintiff’s complaint of pain in her neck accompanied by tenderness in the cervical spine and both elbows, plaintiff was hospitalized from April 13 to April 19, 1961, during which time she was placed in traction and administered sedatives and muscle relaxants. Following plaintiff’s release from the hospital, she visited him approximately 25 times during the interval April 19 and July 20, 1961, on which latter date he found plaintiff fully recovered and discharged her from his care. During the period which plaintiff consulted him, Dr. Means found no change in her condition and no objective symptoms other than her complaints of pain, weakness in both arms and tenderness in the area of her neck and both elbows.
Dr. Charles McVea, Surgeon, saw plaintiff June 29, 1961, at which time she complained of pain in her neck, back and both elbows. Plaintiff related that following the accident she felt pain high in the upper part of her back, soreness all the way down her back and pain in the cervical spine upon movement of her neck. In addition, plaintiff reported pain in both hands, particularly in all the joints of each hand. Palpation disclosed no specific area of tenderness. Dr. McVea found no muscle spasm and noted freedom of movement of the neck and hands as well as normal reflex action in each hand. At this time plaintiff made no complaint of numbness in either hand or arm. His examination of X-rays taken upon plaintiff’s prior hospitalization revealed nothing of significance excepting arthritic changes of the thoracic spine, lower back and cervical spine which condition was deemed of non-traumatic origin and normal for a person of plaintiff’s age. Dr. McVea diagnosed plaintiff’s condition as injury to the muscles and ligamentous structures of the neck which condition should clear up within three months of the accident. Pie believed the accident temporarily aggravated plaintiff’s pre-existing arthritis and was of the further opinion the discomfort attendant thereto should be completely alleviated within three months of plaintiff’s injury.
Plaintiff was seen by Dr. Richard M. Paddison, neurologist, on December 20, 1961, by referral from Dr. Waguespack. Dr. Paddison testified the examination was completely normal save for one finding, namely, *101 non-organic sensory disturbance involving both extremities and both arms. The loss of sensation noted did not follow any particular pattern. In substance Dr. Paddison was of the opinion plaintiff was suffering no disability related to the accident on the date of his examination.
Dr. Joseph M. Edelman, neurosurgeon, saw plaintiff May 31, 1961, upon referral by Dr. Means. He stated he was requested to examine plaintiff to determine whether her condition was due to neural disease or injury, particularly whether her condition might be due to a cervical lesion disclosed by X-ray. Dr. Edelman stated the lesion was unrelated to the accident but caused Dr. Means such concern that he, Dr. Means, requested him, Dr. Edelman, to perform a myelogram. Examination revealed plaintiff’s condition to be completely normal in that no objective symptoms were noted and no residual injury or disability attributable to the accident was disclosed. On the date of his examination he observed strength in her upper extremities was normal and equal, sensory examination was also normal and plaintiff made no complaint of sensory deficiency at that time.
Dr. Henry Olivier, Psychiatrist, testified he examined plaintiff on November 1, 1961, and October 5, 1962, for possible traumatic neurosis. In short, Dr. Olivier testified he found plaintiff was not suffering from traumatic neurosis and neither was she afflicted with conversion reaction. In the opinion of Dr. Olivier (as well as all other medical authorities who testified herein) plaintiff was not a malingerer.
Our careful review of the testimony convinces us that ,as a result of the accident plaintiff sustained a mild whip-lash injury of the cervical spine involving the muscles and ligamentous structure of the neck and perhaps some strain of the muscles of the arms and lower back. The record clearly establishes the absence of fractures or nerve root involvement resulting from the accident in question. While we are convinced the record fails to establish plaintiff is malingering, we are likewise convinced that because of her nervous disposition plaintiff has unintentionally aggravated her symptoms and the extent of her pain and suffering. We are impelled to this conclusion for the simple reason the medical evidence fails to support plaintiff’s continued complaints of pain and discomfort. While it may be argued that such finding supports a claim of traumatic neurosis such diagnosis, however, is clearly contrary to the preponderance of the medical testimony of record and utterly without foundation as evidenced by the foregoing analysis of the expert evidence adduced on the trial of this cause.
We believe the award of $1,500.00 made by the trial judge for plaintiff’s injury, pain and suffering does substantial justice as between the litigants at bar.
In support of her claim for lost earnings plaintiff introduced the testimony of Floyd B. Andrews, accountant for plaintiff’s employer, Landre’s Beauty Salon. Mr. Andrews testified concerning plaintiff’s monthly earnings during the years 1956 through 1961, as reflected on records kept by him. During the five year period preceding 1961, plaintiff’s average earnings for the months of April, May and June were $280.86, $316.69 and $316.23, respectively, whereas during April, May and June, 1961, her earnings were $53.38, $0.00 and $64.00, respectively. Predicated on the foregoing, plaintiff has established net loss of earnings in the sum of $796.40. In answering the appeal, however, counsel for plaintiff has prayed for an award of wages in the sum of $700.39 only.
We believe the evidence preponderates in favor of the conclusion plaintiff is entitled to judgment for lost earnings. Plaintiff, a sister with whom plaintiff resided and plaintiff’s associates testified plaintiff was unable to perform the duties of beautician for a period of approximately three months following the accident. The record establishes plaintiff experienced headaches, pain in her neck, shoulders, back and arms in addition to fatigue which necessitated *102 curtailment of her activities upon returning to work. In this regard plaintiff, as well as her associates, testified plaintiff was required to take all available rest periods during the day which restricted the number of appointments plaintiff could make. While we believe the record refutes plaintiff’s claim she was unable to work at all for three months following the accident because Andrews’ records showed she received commissions of $53.38 in April and $64.00 in June, 1961, it nevertheless establishes she lost wages in the sum hereinabove set forth and she is therefore entitled to the $700.39 claimed in answer to this appeal.
For the reasons hereinabove set forth, the judgment of the trial court is amended by increasing the award in favor of plaintiff, Cecile Rodriguez Batts, from $2,417.93 to $3,118.32 and as amended, affirmed.
Amended and affirmed.