CULPEPPER, Judge.
This case and its companion case, Southern Insurance Company v. Green et al., La.App., 155 So.2d 265, are tort actions arising out of an automobile collision. The plaintiff, Mrs. Nona Faye Archer, was driving a community owned 1960 Chevrolet automobile, with the then 15 year old minor, Linda Gail West (now married to Daniel Archer, but hereinafter referred to as Linda Gail West), as a passenger. The other vehicle, a 1959 Rambler, owned by defendant Perry Green, was being operated by his minor son, William F. Green. In this suit, Virgil West sues individually and on behalf of his minor daughter, Linda Gail West. Mrs. Nona Faye Archer sues individually and her husband, Jimmy E. Archer, sues for damages to the community automobile. The defendants are Mr. Perry Green and his liability insurer, The American Automobile Insurance Company. The companion suit is by Southern Insurance Company, collision insurer of the Archer vehicle, under a subrogation claim for the cost of repairs paid by them. After trial on the merits, a jury awarded verdict for all the plaintiffs. The defendants appealed. The plaintiff, Linda Gail West, answered the appeal asking an increase in her award from $2,500 to $5,000.
The issues are factual. The first is whether there was any negligence on the part of the driver of the Green vehicle; Second, is whether there was any contributory negligence on the part of the driver of the Archer vehicle; Third, is whether the awards for personal injuries to Mrs. Archer and Linda Gail West are inadequate or excessive.
The situs of the accident is in the city of DeRidder at the T-intersection of High School Drive, which runs generally east and west, and a street which leads off south to the high school gymnasium. Both streets are of blacktop construction. At *263 the west side of the intersection is the crest of a hill, from which High School Drive slopes down gradually in both directions.
The accident occurred at about 10:00 a. m. on December 26, 1960. It had been misting rain and the road was wet. The version of the accident presented by Mrs. Archer and her passenger, Linda Gail West, is that they were driving in an easterly direction on High School Drive at a speed of about 20 MPH. As they reached a point, at which they could see over the crest of the hill at the intersection, Mrs. Archer saw the Green vehicle approaching from the east in her lane of traffic. Mrs. Archer testified that the Green vehicle then pulled back to its own proper lane, whereupon she assumed it would stay there. She proceeded on, but just as the vehicles were about to meet, at a point a few feet past the intersection, the Green vehicle suddenly swerved back into Mrs. Archer’s lane and the vehicles crashed head-on, left front to left front.
The point of impact, as established by the investigating police officer, was near the center of the south lane of traffic and 35 feet east of the intersection. The officers also found 30 to 35 feet of skid marks left by the Green vehicle. These skid marks started in the north lane of traffic, near the center of the street, and crossed over into the south lane of traffic to the point of impact.
Turning now to defendant’s evidence, William Green testified that he and his passenger, Jerry Clark, were driving west on High School Drive, intending to turn left at the intersection to go to the high school gymnasium to play basketball. Young Green stated that he was going about 20 MPH in his own lane and, as he neared the intersection, the Archer vehicle came over the hill at a fast rate of speed, in the center of the street, startling Green and causing him to slam on his brakes. Green thought that the point of impact was near the center of the road.
Jerry Clark, Green’s passenger and close friend since early childhood, had been looking down as the cars approached each other. When he glanced up, and saw the Archer vehicle for the first time, it was very close and a collision appeared imminent. Clark testified he thought the Archer vehicle was in the “center of the road” but our impression of his testimony is that he was not very certain of this fact.
Under this conflicting testimony, the jury found the accident was caused solely by the negligence of the driver of the Green vehicle. Defendants’ principal argument in this court is that Mrs. Archer’s testimony cannot be reconciled with certain established physical facts. Defendant argues that since the crest of the hill is near the intersection and the point of impact was only 35 feet east of the intersection, Mrs. Archer, traveling at her admitted speed of 20 MPH or 29.2 feet per second, had only a little more than 1 second within which to observe the Green vehicle approaching. Defendant contends that it would have been physically impossible for her to have observed, in this short a time, that the Green vehicle was first in her lane, then moved back to its own lane, and then, immediately prior to the impact, swerved back into Mrs. Archer’s lane.
As pointed out by counsel for the plaintiffs, one answer to this argument is that, in view of the heighth of the eyes of the driver of an automobile, Mrs. Archer could see over the crest of the hill some distance before she reached it. The evidence is not precise as to her possible view, but the physical facts do not show her testimony is impossible.
Another argument made by defendant in this court is that since young Green’s skid marks started in his own lane, at a point approximately 65 feet from the intersection, there can be no question but what Green was in his own proper lane at the *264 time lie applied his brakes. Defendant contends there is no reasonable explanation for his application of the brakes, except that he must have been startled by the Archer vehicle coming over the hill in the center ■of the road.
As pointed out by counsel for the plaintiff, another plausible explanation for young Green’s action is that as he reached a point about 65 feet from the intersection he had moved near the center of the road (where his skid marks started) and was preparing' to make his left turn at the intersection, when he suddenly saw the Archer vehicle in its own lane, but blocking Green’s intended line of travel. This also could have startled Green, caused him to apply his brakes and skid on the wet pavement.
Another fact which is worthy of mention, and which might have strongly influenced the jury, is that in a statement given by young Green to an insurance adjuster only 4 days after the accident, he did not mention that the Archer vehicle was in the center of the road as it came over the hill. He simply said, at that time, that the Archer vehicle came over the hill at a fast rate of speed and startled him.
We think the issues of negligence and contributory negligence are entirely factual and involve largely a question of credibility of witnesses. Our appellate courts have held many times that the verdict of a jury will not be set aside in a case where the testimony is conflicting, if there was sufficient testimony, which could have been accepted as credible by the jury, to sustain the verdict. Renz v. Texas & Pacific Railway Co., La.App., 138 So.2d 114; Woods v. McCarty et al., La.App., 136 So.2d 122.
[2 — 4J Another applicable principle of law is that a driver who, on the wrong side of the road, collides with another vehicle which is in its correct lane of traffic, has the burden of showing by clear and convincing evidence that he was free of fault. See Breaux v. Valin et al., 138 So.2d 405 (3rd Cir.App.1962) and the many cases cited therein. Thus, in the instant case, the defendant had the burden of showing that young Green was free of fault. We cannot say that the jury was manifestly erroneous in finding the defense failed to meet this burden.
As regards the issue of quantum of damages, the jury awarded $1,700 to Mrs. Archer for personal injuries. Defendant contends this is grossly excessive and should be reduced to not more than $500. The evidence shows that at the time of the impact Mrs. Archer, who was driving, was thrown against the steering wheel causing bruises and contusions of her chest, four cracked teeth, bruises of her lower front gums and a bruised and cut lip. Her knees were also bruised. She was seen by her doctor three times over a period of two weeks and missed six days of work but was not hospitalized. She testified she also saw an army dentist (Mrs. Archer’s husband is a member of the army) and had a “root canal done on one of them.” Mrs. Archer testified that she couldn’t eat anything hard for some time and that she still suffered from pain in her knee.
Under the evidence it is our impression that although the award to Mrs. Archer of $1,700 may be slightly more than awards which have been made for similar bruises, contusions and lacerations in other cases, we think that this case can certainly be distinguished from those involving lesser awards, on the basis of the injuries to Mrs. Archer’s teeth. Such possibly permanent injuries, together with the other stated injuries, enable us to justify the jury award of $1,700.
The jury awarded $2,500 to Linda Gail West for personal injuries. Defendant contends this amount is excessive and should be reduced to $1,500. Plaintiff has answered the appeal and asked an increase to $5,000. The evidence shows that at the time of the collision Linda Gail West, who *265 was a passenger on the front seat, was thrown against the dashboard, her head hit and cracked the windshield and her knees struck the heater. She received a depressed fracture of her nose, which later had to be refractured, reset and placed in a cast for about six days. She received a mild to moderate whiplash injury to the neck which caused her discomfort for several months. She received a laceration on the forehead at the hair line and various bruises. She also received a severe sprain of the light ankle, which still swelled occasionally as late as about two years after the accident. Under these circumstances we think the award of $2,500 is neither excessive nor inadequate.
There is no issue as to the awards for automobile repairs, medical expenses or other special damages.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant.
Affirmed.