John GORDON, Jr., and Lanston Jacquet

v.

Hugh L. DAIGLE and Indiana Lumberman's Mutual Insurance Company.

Civ. A. No. 9494.

United States District Court
W. D. Louisiana,
Lafayette Division.

Feb. 7, 1964.

Simon & Trice, J. Minos Simon, Lafayette, La., for plaintiffs.

Mouton, Champagne & Colomb, George J. Champagne, Jr., Lafayette, La., for defendants.

PUTNAM, District Judge.

Plaintiffs, John Gordon, Jr. and Lanston Jacquet, citizens of Texas, sue Hugh L. Daigle and his insurer, Indiana Lumberman's Mutual Insurance Company, for damages allegedly resulting from injuries received by them in an automobile accident which occurred within our territorial jurisdiction on July 28, 1962. Jurisdiction is invoked under Title 28 U.S.C.A. § 1332.

Gordon claims damages in the sum of $27,000.00. Jacquet claims damages in the sum of $53,631.67, being $50,000.00 for personal injuries, $3,000.00 [1] for past and estimated future medical expenses and $631.67 for repairs to his automobile in which he and Gordon were riding at the time of the collision. Defendants

---

1. This $3000.00 claim appears to be entirely fictitious as there is absolutely nothing in the evidence to support it.

Daigle and Indiana have moved to dismiss for want of jurisdictional amount.

The motions were heard on February 3 and both parties afforded a full opportunity to introduce evidence. We hold these motions to be good and dismiss the complaint for the reasons hereinafter set forth.

■ The burden of proving facts sufficient to bring his claim within the jurisdictional amount when it is challenged by the defendant rests upon the plaintiff. Mere allegation is not sufficient. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In attempting to carry this burden plaintiffs have filed their own affidavits, which may be fairly summarized as follows:

Gordon says that at the time of the accident he was in good health and not suffering any pain; he had been regularly employed as a stevedore and was able to do all of the work in connection with such employment. Following the accident in question he was unable to do any work for about eighteen days during which time his neck, back and left arm were very painful. He consulted a physician who examined him and prescribed medication and advised him to use heat treatments at home.

He had not consulted any additional physicians or obtained any further treatment but has continued to have his prescriptions refilled and has used a heat lamp at home. He takes aspirin which gives him slight relief, and states that since the time of the accident his neck frequently becomes stiff and sore and his back hurts between his shoulder blades. While he has been working as a stevedore the other members of his crew relieve him of all but light work. His left arm gives him pain in the area of the elbow which sometimes extends down to his fingers and he also has pain in his right arm. He also states that his pain does not remain on a constant level and is now about the same as it was about a month after the accident in question.

Jacquet in his affidavit states that he was injured several years prior to this accident but had suffered no pain for a number of months before July 28, 1962. Following the automobile accident in question he immediately suffered severe pains of his back, neck, shoulders and arms. He had not previously suffered any pain in his shoulder or arms from his previous accident, all pain therefrom being in his back. He states that his neck aches almost constantly and from time to time becomes quite stiff and sore and further that a lump has developed on his left wrist.

This claimant also uses aspirin regularly for pain with partial relief as a consequence and in his sworn affidavit he states that he was seen by Dr. Catalano in Port Arthur who had X-rays taken but did not return to the doctor because he was financially unable to pay the cost of private treatment, but has gone regularly to the Veterans Administration Hospital where physicians have informed him there was nothing they could do to improve his condition.

The deposition of Jacquet was introduced on trial of the motion. This deposition establishes that he was seen by Dr. Alamon of Port Arthur who had X-rays taken by Dr. Catalano. Copies of Dr. Alamon's report on both Gordon and Jacquet are in evidence, being attached to the motion to dismiss.

At the pretrial conference which was held in this matter it was developed that this was all of the medical evidence which these plaintiffs had upon which their claims are based. We quote from the letters of Dr. E. L. Alamon of Beaumont, Texas as follows:

### "JACQUET"

"On August 4, 1962, I saw in my office for examination and treatment, the above named colored man, 43 years of age. He complained of a back injury sustained on July 28, 1962, when the car in which he was riding as a passenger on the front seat was in collision with another car jerking his lower back.

"The patient says that he had had two discs removed at Veterans Hospital in Houston in May, 1961, but had recovered from this operation and was experiencing no back pain until the recent wreck, since when he had sustained lumbo-sacral pain on standing or bending.

"Examination of the back revealed an old, healed, operative scar in the midline in the region of the lumbar spine. He was tender in the lumbo-sacral and upper sacral region of the back. Bending was painful and produced palpagle spasm at about 45°. Straight leg raising was painful at 45° bilaterally. Sciatic tension tests and Ely's tests were negative. Reflexes and sensation were normal.

"X-ray studies of the lumbo-sacral spine were performed by Dr. Russell J. Catalano and his report is enclosed. It will be necessary to consult the record of the operation at Veterans Hospital if his findings are to be reconciled with the patient's conception of the operation that he sustained.

I conclude then that in the automobile wreck of July 28, 1962, Lanston Jacquet incurred a lumbo-sacral sprain to a previously injured and operated back. Rest and physiotherapy should prove to be adequate treatment."

### "GORDON"

"On August 4, 1962, I saw in my office for examination and treatment, the above named colored man, 43 years of age. He complained of a neck injury sustained on July 28, 1962, when the car he was driving was involved in a collision, throwing him into the steering wheel, bruising his chest which has since recovered and jerking his neck. He still has neck pain and stiffness.

"Examination revealed tenderness of both trapezins muscles and slight to moderate limitation of flexion and hyperextension of the neck.

"I conclude then that in the wreck in question, John Gordon, Jr., incurred a neck injury consisting of a strain of the posterior cervical muscles. I treated him with diathermy."

The deposition of Jacquet was also introduced in evidence but was objected to because it had not been filed with the Clerk by the officer taking the deposition as required by 28 U.S.C.A. F.R.Civ.P. Rule 30(f). Also sought to be introduced was a purported copy of the records of the Veterans Administration Hospital in Houston, Texas which was objected to because it did not meet the certification requirements of 28 U.S.C.A. F.R.Civ.P. Rule 44. Both objections were sustained, but the Court allowed counsel for the defendants to cure these defects within a 48-hour period. The deposition was recertified by the reporter taking same and filed, but the record of the Veterans Administration Hospital is still not certified and is not considered by the Court in reaching this decision.

In his deposition Jacquet stated that he reported to the Hospital from time to time and that the doctors there examined him. His testimony is very vague as to which hospital he visited, but is positive to the effect that he did not complain about any of these symptoms which he now insists upon on the occasion of such visits, nor are we informed as to what these doctors found. There are many inconsistencies between his testimony in the deposition and the facts set out in the affidavit filed on trial of the motion.

We point out that Gordon, according to the deposition given by him which is in this record, is still at work as a stevedore and is now earning $3.11 per hour, which is more than he earned at the time of the accident, and that he only lost about three weeks' work according to his own statements. Jacquet was not working at the time of this accident nor had he worked since his previous back injury. Insofar as his ability to perform heavy labor is concerned he is no worse off now than he was then. Neither plaintiff has any substantial claim for loss of wages.

■ With these facts before us, we look to the doctrine announced in the case of St. Paul Mercury Indemnity Company v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) and the decisions of the Courts following. Plaintiffs point to Horton v. Liberty Mutual Insurance Co., 367 U.S. 348, 81A S.Ct. 1570, 6 L.Ed.2d 890 (1961) as governing this case. We note, however, that in Horton the Supreme Court cites Red Cab Co. with approval for the general proposition that the amount in controversy should be decided from the complaint itself, unless it appears or is in some way shown to a legal certainty that the amount stated in the complaint cannot be recovered by plaintiff, or if, from the proofs, the Court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

A careful reading of the Horton case with the judgment of the Court of Appeal in the same case, reported in 5 Cir., 275 F.2d 148, convinces us that the holding is one required by the peculiar provisions of the Compensation Act of the State of Texas which requires trial de novo on appeal, and that neither the Fifth Circuit or the Supreme Court intended by that decision to overturn the doctrine of the Red Cab Co. case and its progeny.

■ An independent review of the State jurisprudence in similiar cases involving cervical sprains and "whiplash" injuries to the back demonstrates to us conclusively that the amounts claimed by Gordon and Jacquet cannot be considered as having been made in good faith. We make special reference to the following cases: Cassreino v. Brown, La.App., 144 So.2d 608 (1962). (Summarizes Louisiana cases involving similar type injuries); Hickman v. Bawcom, La.App., 149 So.2d 178 (1963); Carvell v. Winn, La.App., 154 So.2d 788 (1963); Kennison v. Grain Dealers Mutual Ins. Co., La.App., 150 So.2d 657 (1963); Batts v. Travelers Ins. Co., La.App., 155 So.2d 98 (1963);

West v. American Ins. Co., La.App., 155 So.2d 261 (1963); Bunch v. Gay, La.App., 155 So.2d 269 (1963); Soileau v. U. S. Fidelity & Guaranty Co., La.App., 158 So.2d 397 (1963).

■ Each case involving damages for personal injuries, however, must be decided on the basis of its own facts. There can be no hard and fast adherence to awards made in other cases for determining quantum. These decisions are referred to merely as a guide, and to point out the basis upon which we predicate our finding that the amounts claimed by Gordon and Jacquet are colorable, excessive and inflated for the purpose of conferring jurisdiction under 28 U.S.C.A. § 1332(a), and that on the basis of the record before the court it is apparent to a legal certainty that they could never reasonably expect to recover the sums claimed by them, or even an amount approaching the jurisdictional minimum of $10,000.00. See Leehans v. American Employers Insurance Co., Inc., 273 F.2d 72, (5 Cir. 1959); Matthiesen v. Northwestern Mutual Ins. Co., 286 F.2d 775 (5 Cir. 1961); Shaffer v. Coty, Inc., 183 F.Supp. 662 (S.D.Cal.1960); Barron & Holtzoff, Federal Practice & Procedure, Vol. 1, p. 102 et seq., § 24; Moore's Federal Practice, Vol. 1, p. 832 et seq., §§ 0.92(1), (4), 0.93(3).

To further emphasize this finding, the Court feels that if, after trial a jury should award these plaintiffs damages totaling more than $10,000 to either of them, on the basis of the evidence submitted here, we would be required by conscience and the law to enter a remittitur to some reasonable amount commensurate with the injuries received.

It is not the intention of this Court to impute to the attorneys for plaintiffs any lack of professional good faith. The claims reflected by these pleadings are necessarily based upon information furnished to them by their clients in advance of detailed reports and other facts which are usually developed after the petition is filed. They have done no more than what other reputable, sincere and competent

plaintiff's counsel do—assert a claim for an amount so that recovery may be had for every cent conceivable. Here, however, the facts are such as to transcend the conceivable and even defy imagination.

Counsel for the defendants will immediately prepare and present for signature a decree dismissing this complaint in accordance with the views herein expressed. In view of the fact that this motion was not filed until January 13, 1964, after a pretrial conference was held, we will consider any additional evidence plaintiffs may wish to submit on application for new trial, if one should be made.