ELLIS, Judge.
This case involves a collision which occurred May 21, 1960 at the intersection of Plank Road and Evangeline Street in the City of Baton Rouge. At the scene of the accident Plank Road is a four lane blacktop road and Evangeline ■ Street is a two lane blacktop street. The intersection is controlled by a common semaphore light, equipped with three colored lights, without any directional arrows. At the time the accident occurred the weather was clear, the road level and straight and the hour was ten A.M.
The plaintiff was traveling north on Plank Road in the inside northbound lane at approximately 35 miles per hour which is the maximum legal speed limit at that point. Malcolm O. Sayes had been traveling south on Plank Road, but had come to a complete stop at Evangeline Street for the purpose of executing a left turn across the northbound lanes of Plank Road into Evangeline Street.
Maryland Casualty Company is the public liability insurer of defendant Malcolm O. Sayes.
The defendant, Malcolm O. Sayes, testified as follows: He arrived at the intersection of Plank Road and Evangeline Street while the light confronting him was green. Being unable at that time to execute a left turn because of on-coming traffic, he waited through the remainder of that green light, through the yellow caution and red lights, and through a second green light. When the second green light changed to yellow or caution, he observed that cars in the outside northbound lane of Plank Road were slowing down in anticipation of the red light which would follow the caution which had just appeared. At this moment he had not seen the plaintiff, but started to make his left hand turn and “After I turned, I took another look in that direction and I saw his truck. But I knew he would hit me, but there was nothing I could do about it after I saw him,” and he guessed that the plaintiff at the time he saw him was about 150 feet away. He testified the front end of his car was in the intersection, however, the point of impact occurred before he ever entered the northbound lane of Plank Road. It was established that this point was one foot north of the north edge of Evangeline Street.
Clearly Sayes was negligent, and the lower court so found, however, it also found that plaintiff was contributorily negligent and dismissed his suit and it is from this judgment the latter has appealed.
The plaintiff testified he was traveling north on Plank Road on the inside lane at 35 miles per hour. Plank Road has four lanes with a concrete media in the center and is 40 feet wide. He approached the intersection of Plank Road and Evangeline Street, looked up at the light and estimated he was about 100 feet from it and it was green so he proceeded on at the same rate of speed. He noticed a car in the outside lane slowing down and turning into a filling station and the traffic behind it had slowed down, therefore he proceeded on in the inside lane which was open and when within about 20 feet of the light the Sayes automobile suddenly turned left in front of him. “I hit him and that was all there was to it.” He stated he had no time to apply his brakes. He had noticed the Sayes vehicle stopped at the intersection just before it turned in front of him. Plaintiff admits he did not look at the light after he saw it was green at approximately 100 feet from the intersection. From the testimony we believe at the time plaintiff entered the intersection the light had changed from green to yellow or caution, for it is undisputed that Sayes immediately began his turn when the light turned to caution. Also, Mrs. Crad-dock testified she was traveling north on Plank Road in the outside lane following an automobile which was not identified at the trial and she had slowed and stopped because the light changed from green to caution. She was positive in her testimony that her car had come to a complete and *473 gradual stop behind the first car which also stopped for the light, and thereafter the plaintiff passed her and drove on into the intersection. According to estimates of distances shown in this record, Mrs. Craddock in her position behind the wheel was found to be approximately 38 or 40 feet from the intersection, possibly closer.
However, not every person who enters an intersection on a yellow light will be held negligent or contributorily negligent, as caution lights are provided to warn the motorist who has a green light that the light is about to change to red. The motorist is allowed just time to stop before entering the intersection, or, if he had already entered or cannot safely stop before entering, to complete the passage. Thus, the contributory negligence of the plaintiff in this case depends upon whether, at the time the light turned to yellow, he had time to stop before entering the intersection or could safely stop before entering.
In order to decide the question, a close review and analysis of the testimony which bears upon the points under consideration is necessary. First we have the testimony of Sayes who was parked at the north intersection during one green light, one caution, and one red light, and another green light, and who, when it turned to caution the next time, started to make a left turn. We also have the testimony of Mrs. Craddock that she first became conscious of the Sayes vehicle which was traveling south, making this left turn, “It was after I had stopped.” Sayes was anxious to make this turn and probably started as soon as humanly possible after the light turned to caution, and at this time Mrs. Craddock was stopped approximately 35 or 40 feet from the intersection. She gave further testimony as follows:
“Q. Well, what I’m trying to find out is simply this. Was this vehicle moving when you first saw it — ■ the vehicle going south that made the left turn?
“A. It all happened so quickly. I— the car in front of me stopped, I stopped, and it seemed like immediately he had proceeded to make his turn.
“Q. And then the other vehicle came by you, and there was the collision, is that right?
“A. Yes.
“Q. In other words, it happened almost simultaneously — just about the same time?
“A. But I had already completely stopped.
“Q. I understand that, but—
“A. And it — when that truck passed me, I saw that car making that turn and I said — that’s when I commented that there was going to be a crash, because the car just did not have time to get out of the way.”
In other words, the plaintiff’s truck passed her car about the time the defendant Sayes began his turn which was as soon as possible after the light turned to caution. Therefore, the plaintiff’s truck, at the time the light turned to caution, was within 30 or 40 feet of the intersection, although he estimated 20 feet of the light, which was located in the center of the intersection and which would place his truck at that time approximately 10 feet from the south intersection line.
It is shown that the speed limit on Plank Road was 35 miles per hour and the plaintiff was going at this speed and he would therefore cover 51.1 feet per second. Thus, if we use the three quarters of a second reaction time, the plaintiff would have proceeded 38 or 40 feet further forward to the intersection before the effective application of the brakes and this would have left 27 *474 feet for him to bring his truck to a stop before reaching the point of impact, which was one foot north of the intersection. There is no speed chart which estimates that plaintiff could have stopped under these facts and avoided the accident. Neither could he have stopped prior to entering the intersection. He had three seconds under one version of the length of time the caution stays on and four or five seconds according to the testimony of the investigating policeman to complete his crossing of this intersection. In three seconds he would have gone approximately 153 feet. He needed only 64 feet or slightly more than one second to complete the crossing of the intersection on the yellow light. Plaintiff had plenty of time to clear this intersection and could not stop before entering the intersection nor before reaching the point of impact. There was no reason for Sayes not to have seen the plaintiff in close proximity to the intersection at the time the light turned to yellow and before he began his left turn. The plaintiff, as well as Mrs. Craddock, realized it was impossible for him to avoid the collision. Had Sayes looked before he moved he would have realized the same thing for the minute he did look, which was immediately after starting to make the turn, he realized there was nothing either could do to prevent the accident. Of course, his estimate of 150 feet is completely unreliable for there would have been no accident if plaintiff had been 150 fee' after he started his turn.
We are therefore of the opinion that the sole proximate cause of this accident was the illegal action of the defendant Sayes in attempting a left turn from a stopped position after the light had turned to caution or yellow and that the plaintiff was not guilty of any contributory negligence which would bar his recovery.
We have studied the excellent briefs submitted by counsel for the defendants and particularly the facts upon which he bases his conclusions that the light was red when Borskey entered the intersection. For the above and foregoing reasons we do not agree with this conclusion but are of the definite opinion that the plaintiff entered the intersection upon the caution light, at a time and distance which took less than a second for him to actually enter the intersection, and when he could not have stopped and would have completed the crossing of the intersection before the caution light turned to red had not the defendant, Sayes, improperly and without looking, made a left turn which created an emergency from' which the plaintiff could not possibly extricate himself.
Counsel for the defendants also cites Title 11, Section 61 of the Baton Rouge City Code, the case of Derouen v. American Employers Insurance Company, 240 La. 486,. 123 So.2d 896, and a statement from Blash-field, Cyclopedia of Automobile Law and Practice in Section 1040 as follows:
“Section 61. Traffic-Control Signal Legent — Whenever traffic is controlled by traffic-control signals exhibiting the words ‘go’, ‘caution’, or ‘Stop’, or exhibiting different colored lights successively one at a time, or with arrows, the following colors only shall be used and said terms and lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
* * * * * *
“(b) Yellow alone or ‘Caution’ when shown following the green or ‘Go’ signal.
“(1) Vehicular traffic facing the signal is thereby warned that the red or ‘Stop* signal will be exhibited immediately thereafter and such vehicular traffic shall not enter or be crossing the intersection when the red or ‘Stop’ signal is exhibited.
* * * * * J■
“(c) Red alone or ‘Stop’.
*475 ■“(I) Vehicular traffic facing the signal shall stop before entering the cross walk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until green or ‘go’ is shown alone.”
“As the Supreme Court stated in [Derouen v. American Employers Insurance Company, 240 La. 486, 123 So.2d 896, 900 (I960)]:
“ ‘It is generally well known that semaphore lights can change colors within a driving distance of one or two feet. It cannot he gainsaid that it is the duty of •a driver approaching a semaphore controlled intersection to observe the light for a reasonable distance to determine that it is still green before negotiating the intersection; otherwise, he could be :a transgressor if the light changes against him. * * *
“The following statement appears in Section 1040 of Blashfield, Cyclopedia of Automobile Law and Practice:
“ ‘As a general rule, where a yellow or “caution” light is displayed a motorist must come to a stop, if he has not already entered the intersection.’ ”
The plaintiff did not violate any of these laws. First, he did not enter nor would he have been crossing the intersection when the red or stop signal was exhibited. Sayes violated “(c)”. Neither did the plaintiff violate the law as stated by the Supreme Court in the Derouen case for the light had •not changed against him nor would it have ■done so could he have proceeded normally across the intersection, without interference by Sayes. The statement in Blash-field is subject to exceptions which we have noted hereinabove. The defendant did not bear the burden of proving the contributory negligence charged in their petition.
This leaves only the question of damages to be awarded the plaintiff. Plaintiff at the time of the accident was 36 years old and had been engaged in tree surgery for a number of years. He was unable to do any work for a period of two months and even after three months was unable to drive a winch truck or use heavy equipment which was required of a tree surgeon. As a result of the accident he suffered lacerations of the scalp and lip, upper and lower, fractures of the sixth, seventh and eighth ribs, the sixth rib being fractured in two -places anteriorly with slight displacement of the fragments, of the seventh rib showing a second fracture of its anterior tip, contusions of the scapulae and left elbow, tenderness over the upper recti muscles, tenderness and mass over right rib area. He was hospitalized for a period of one week. When he went in the hospital he suffered from shock and was, as the doctor stated, hyperventilated, which was described as a deep, fast breathing as the result of nervousness and fright. It was necessary to administer demoral and dilaudid. He suffered while in the hospital with headaches, chest pains, right and left, pain in the arm and discomfort in the abdomen, which he attributed to having been struck by the steering wheel in this region. Sutures were applied to the lacerations of the scalp as well as a number inside the left upper lip. There was a one inch scar left on the scalp.
On June 3, 1960 the plaintiff complained of nausea, pain in the stomach and on June 8th complained to Dr. Sanders of pain in the back, shoulder ’ blade and spine and in the chest wall on the right side. Additionally plaintiff testified he had pain in his legs and forearm for approximately a month and a half to two months. He got some relief from the pain after using a belt to support his ribs and back.
Plaintiff has asked for a $5000.00 award as the result of the pain, injuries and disability, together with special damages which have been shown in the record to total $501.20 and which included $50.00 as the deductible portion of his automobile insurance policy, $123.00 to Dr. Sanders, $10.-00 for the ambulance, $55.00 to Dr. Chavers, *476 $225.70 to the Baton Rouge General Hospital and $37.50 for x-rays to the same hospital.
Counsel for plaintiff cites the case of Lalla v. Travelers Indemnity Company, La. App., 79 So.2d 343, in which the plantiff was awarded $5000.00 for eight broken ribs, unconscious for 24 hours, hospitalized for three weeks, and the ribs were fractured in two places. Counsel argues that if it takes eight ribs two months to heal it still takes three ribs the same length of time and queries can there be much difference in the pain. However, in the case at bar plaintiff at the time of the trial was still complaining of swelling in the stomach at times and pain.
He also cites Thomas v. Checker Cab Company of New Orleans, La.App., 90 So. 2d 395 in which the plaintiff was confined to the hospital for five days, received a hard blow to the right side of the chest and trunk, and fractures of the fifth, sixth and seventh ribs of the mid-auxiliary region and the eighth, ninth and tenth ribs of the posterior-auxiliary region from which he suffered pain for approximately four months and was wearing a belt for seventeen months after the accident for support and was awarded $5,000.00.
We believe that an award of $4000.00 in this case would be in line with previous jurisprudence and adequate under the facts, together with the special damages totalling $501.20.
For the above and foregoing reasons it is ordered, adjudged and decreed that the judgment of the District Court be reversed, set aside and annulled and it is now ordered that there be judgment in favor of John C. Borskey and against the defendants, Malcolm O. Sayes and Maryland Casualty Company, jointly, severally and in solido in the full sum of $4501.20 together with legal interest from judicial demand until paid and all costs of suit, including the fees of the experts.
Reversed.