170 So.2d 513 (1965)
Caren FONTENOT, Plaintiff and Appellee,
v.
GRAIN DEALERS MUTUAL INSURANCE COMPANY et al., Defendant and Appellant.
No. 1327.
Court of Appeal of Louisiana, Third Circuit.
January 5, 1965.
Rehearings Denied January 27, 1965.
Writs Refused March 12, 1965.
Plauche & Stockwell, by Oliver P. Stockwell, Lake Charles, for defendant-appellant.
Nathan A. Cormie & Assoc., by Richard B. Cappel, Lake Charles, for plaintiff-appellee.
Cavanaugh, Brame, Holt & Woodley, by Frank M. Brame, Lake Charles, for defendant-appellee-appellant.
Before TATE, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for damages to plaintiff caused when the automobile in which he was a passenger was struck from the rear by a vehicle driven by the insured of defendant, The Fidelity & Casualty Company of New York. After a trial on the merits, the district judge awarded plaintiff $21,304.10, of which $20,000 was for pain and suffering, loss of earnings and future medical expenses and the sum of $1,304.10 was for medical expenses already incurred. From this judgment defendant appealed.
On appeal the defendant, The Fidelity & Casualty Company of New York, has admitted liability. Thus, the sole remaining issue is the amount of damages awarded.
As a result of this rear end collision, which occurred on February 1, 1963, plaintiff suffered a severe "whiplash" injury to his neck and minor bruises to his shoulder and knee. Plaintiff contended he also injured his left testicle but the trial judge correctly found, from the expert medical testimony, that this condition, diagnosed as a varicocele, was not caused by the accident. Without going into detail it is sufficient for the purposes of this opinion to *514 state that plaintiff suffered a severe whiplash injury. He was hospitalized and treated with traction and pain-killing drugs on two occasions in February of 1963, and on one occasion in July of 1963, for a total of 13 days. In addition, during the 14 months preceding the date of the trial on March 25, 1964, he received 145 physiotherapy treatments at the doctor's office, as well as taking home traction treatments with a device furnished to him. By October of 1963 he attempted to return to his work as a carpenter but was unable to do so because of the pain. He was fitted with a head halter soon after the accident and as of the date of the trial was continuing to wear this device.
However, the expert medical testimony was clearly to the effect that the injury was solely to the ligaments and musculature and that plaintiff would recover completely within a few months after the trial and certainly in no more than two years from the date of the accident.
Before discussing the amounts of awards which have been made in previous cases for similar injuries, we would like to point out that we are aware of the very recent case of Ballard v. National Indemnity Co. of Omaha, Neb., La., 169 So.2d 64 (1964) in which our Supreme Court clarified its decision in Gaspard v. Lemaire, 245 La. 239, 158 So.2d 149 by stating:
"In resolving the question of whether the jury in fixing the amount of the award in the Gaspard case had abused the discretion vested in it by law, we pointed out that `* * * In view of our codal provision, the appellate courts should consider the amounts of awards in other cases only so far as they are relevant to the question of whether the judge or the jury has abused its discretion in fixing the award in the case under consideration.' However, an appellate court should not fix the amount of the award solely to maintain uniformity of awards, thus ignoring the prerogatives of the trial judge or jury in assessing awards in such cases as set forth in Art. 1934 of the Civil Code. The amounts of awards in so-called `similar' cases are relevant only to determine whether there has been an abuse of discretion, but for no other purposethat is, to determine whether the award is so excessive or so inadequate as to be an abuse of discretion."
In previous cases involving similar injuries, i. e., a severe whiplash producing considerable pain of rather prolonged duration, but with no permanent residuals, our courts have awarded $5,000 or more. Cassreino v. Brown, 144 So.2d 608 (La. App. 4th Cir. 1962); Davis v. Roberts, 159 So.2d 511 (La.App. 1st Cir. 1963); Ray v. State Farm Mutual Automobile Ins. Co., 152 So.2d 566 (La.App. 2nd Cir.). In cases involving permanent residual pain or disability, awards approaching $10,000 have been made in several cases. Poleman v. Employers Liability Assurance Corp., 164 So.2d 630 (La.App. 3rd Cir.); Carvell v. Winn, 154 So.2d 788 (La.App. 3rd Cir.); Vosbein v. Arras, 149 So.2d 727 (La.App. 4th Cir.); St. Blanc v. Andras, 148 So.2d 850 (La.App. 4th Cir.). However, as noted above, the expert medical testimony here shows clearly that there will be no permanent residuals of the injury.
The trial judge awarded $20,000 for (1) pain and suffering, (2) loss of wages, past and future, and (3) future medical expenses. But he did not specify the amount for each item. With regard to future medical expenses, we note that on the date of the trial, 14 months after the accident, the only medical treatment being received by plaintiff was occasional physiotherapy and there is absolutely no evidence to indicate what, if any, future medical expense would be required before plaintiff completely recovered on a date no later than two years from the accident. Since very little, if any, award is justified for future medical expense and, as noted above, only an award in the neighborhood of $5,000 is justified for *515 pain and suffering, this means that in order to affirm the award of $20,000 we must find the evidence supports an award of $14,000 to $15,000 for loss of wages. We have concluded the evidence falls far short of supporting any sum approaching $14,000 for loss of wages and that the trial judge therefore abused his discretion and the award must be reduced.
As regards loss of earnings, the plaintiff testified he had been a carpenter for many years and "when he worked" he earned $3.50 an hour and usually worked 40 hours a week. Other testimony shows that plaintiff's rate of pay was actually $3.33 per hour. The evidence also shows without question that plaintiff did not work full time for one employer, but instead was a member of a carpenters union which assigned him to various jobs as work was available.
Plaintiff introduced no evidence whatever to show how much he earned in previous years or what percentage of the time he worked, although it would appear that such evidence, in the nature of income tax returns or employment records, was available.
On the other hand, the president of the carpenters union of which plaintiff was a member, as well as the financial secretary of this union, both testified that work had been scarce in the Lake Charles area since the date of plaintiff's injury and that many of the union members had found it necessary to go to Texas, Arkansas and New Orleans to find work. The particular job on which plaintiff was working at the time of the accident lasted only two more months.
As a general rule, recovery is allowed for loss of earnings, provided the plaintiff sustains his burden of proving such loss with reasonable certainty. 15 Am. Jur. 499 Verbo Damages, Section 89. In cases like the present, where earnings vary, the plaintiff is not required to prove such loss with mathematical exactness, but may show through other means, as for instance his actual earnings during the previous year, what he would have earned during the period of his disability. This is the rationale of Stevens v. Dowden, 125 So.2d 234 (La.App. 3rd Cir. 1960) in which a dentist was disabled for about one month and we held his personal estimate as to loss of earnings, supported by his tax returns for the previous year, afforded the basis of a reasonable estimate as to loss of earnings. But see Jobe v. Credeur, 125 So.2d 487 (La.App. 3rd Cir. 1960) where the owner and operator of an oil well drilling business was denied loss of income because his uncorroborated general estimate of such loss was not substantiated by other records which were available and were not produced.
Here plaintiff has definitely proved that he could have worked two more months at the job he was on when the accident happened. Thus he is entitled to about $1,060 for loss of wages for this two months. However, plaintiff has not shown with reasonable certainty how much he would have earned during the remainder of his two years disability. We don't have his past work record and there is not even an estimate in the evidence as to how much he would have worked during his disability.
Nevertheless, plaintiff is entitled to some award as general damages for two years disability. Considering all of the evidence, and in an effort to do substantial justice under the circumstances, we think the $20,000 awarded by the trial judge for pain, suffering, disability, loss of wages, and future medical expense must be reduced to the sum of $10,500. This is in addition to the $1,304.10 for medical expense already incurred.
For the reasons assigned, the judgment appealed is amended by reducing the award from $21,304.10 to $11,804.10. As thus amended the judgment is affirmed. All *516 costs of this appeal are assessed against the defendant.
Amended and affirmed.

On Applications for Rehearing.
En Banc. Rehearings denied.