YARRUT, Judge.
This is a direct action against the liability insurer of the owner of a Cadillac automobile which collided with a Chevrolet pickup truck at 11:00 p. m. on a clear night on February 22, 1964, at the intersection of South Saratoga and Valence Streets in New Orleans. The pickup truck was being driven by Plaintiff on Valence Street in a northerly direction toward the lake, and the Cadillac by the 16-year-old son of the owner, who was driving on South Saratoga Street in a westerly direction toward uptown New Orleans. (Reference to Defendant herein, regarding the accident, will be to the driver of the Cadillac automobile, unless otherwise indicated.)
Each party charged the other driver with the usual acts of negligence, to-wit, excessive speed, failure to look and observe, and denying the other the right to complete the intersection after preempting it. Defendant insurer than pled contributory negligence of Plaintiff, in the alternative.
Defendant insurer has appealed from a judgment awarding Plaintiff $10,000.00 for personal injuries (the policy limit), and $350.00 property damage, the policy limit for property damage being $5,000.00.
At the time of the accident the intersection of South Saratoga and Valence was uncontrolled by any traffic signs or signals, even though Valence is admittedly a 36-foot-wide paved main thoroughfare, and South Saratoga is a 26-foot-wide gravel street. The question is: Who had the right-of-way at the uncontrolled intersection? The Municipal Traffic Ordinance, City of New Orleans, Section 38-133, provides :
“(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.
“(b) When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on .the left shall yield the right of way to the vehicle on the right.”
As Defendant was approaching from Plaintiff’s right, he would have had the right-of-way if both vehicles arrived at the intersection at approximately the same time. ITowever, Plaintiff would have had the right-of-way if, as he claims, he reached the intersection substantially ahead of Defendant.
Plaintiff testified he was traveling approximately twenty miles an hour (the speed limit), was looking straight ahead when his truck was struck in the right front fender by Defendant’s car; that he lost consciousness immediately but was told the impact caused his automobile to veer into a telephone pole situated on the northwest corner of the intersection; that he did not have the opportunity to apply his brakes as he saw Defendant’s car only moments before the impact.
The investigating officer testified Defendant told him that, as he approached the intersection of Valence Street, he reduced his speed as he intended to make a left turn but, as he reached the intersection, he began to accelerate his speed because he had decided not to turn but to cross the intersection when, suddenly, upon *176 seeing the truck, driven by Plaintiff, he approaching, applied his brakes and skidded into it. Defendant was in military service at the time of the trial but in his deposition, introduced into evidence, gave the following account of the accident:
“Well, usually when I come to an intersection, if I am not certain about it, I will hit the horn. Well, I did hit the horn and when I went through the intersection, I looked to the right first and then a block or two away I saw a car down the street, so I was going to coast on through the intersection. I was thinking about taking a left to go right in front of the Valencia Club and -I was about to take a left and I was still in the middle of the , block — well, not actually in the middle, but I hadn’t come into the intersection yet. Well, I was going to go straight on through and Chuck was on my right and he said — well, I looked over to the left and he said, 'Stop/ like that, and I looked over to the left and I hit the brakes and I must have hit them too late, because I am not certain whether my car had stopped or not in the intersection. But I hit the brakes and, well, I saw the truck coming and it came straight on into my front left fender and that is where the accident happened, right in just about the middle of the intersection.”
The “Chuck” referred to was a 16-year-old companion (Charles Beard) his guest, and passenger at his right on the front seat, who testified at the trial.
It is noteworthy that Defendant admitted changing his mind suddenly in deciding to cross the intersection rather than turn left. Furthermore, there were 18 feet of skidmarks from Defendant’s car to the point of impact, and IS feet of skid-marks subsequent to the impact, from which the investigating officer concluded Defendant was traveling a minimum of thirty miles an hour in a twenty-mile per hour zone prior to applying his brakes.
Defendant’s guest passenger (Chuck) testified that he and Defendant had just left a party and were going to the Valencia Social Club, about a block from the accident; had driven around the block once looking for a parking place, but had been unable to find one; that, while adjusting the radio shortly before the accident, he suddenly looked up and saw Plaintiff’s truck already in the intersection just as Defendant’s car was “proceeding into the intersection.”
There is no doubt that the Defendant, driving the Cadillac automobile on South Saratoga Street, approaching the intersection on Plaintiff’s right, had the statutory right-of-way. The right-of-way which a motorist might have is not, however, a license to enter an uncontrolled intersection at a speed which under the physical facts, as existed here, is excessive and without cautious regard for the possible sudden appearance of an automobile on the intersecting street. If he does enter under such conditions, he forfeits his right-of-way. Ball v. Marquette Casualty Company, La.App., 176 So.2d 799; Grangers Mutual Insurance Company v. Stacey, La.App., 148 So.2d 778.
It should be pointed out here that there is a building at the intersection of South Saratoga and Valence Streets which comes up to the sidewalk on the southeast corner on Defendant’s left and Plaintiff’s right which, according to the testimony of the witnesses and the photographs in evidence, obscured the view of both motorists. This condition, when considered along with the fact that South Saratoga Street is clearly a secondary street in comparison with the much wider, well-paved Valence Street, a thoroughfare, places a burden upon Defendant to approach the intersection with more than ordinary care, keeping a cautious lookout at a reduced speed.
We think the testimony of Defendant clearly shows that he approached the intersection without keeping a proper look *177 out. In his deposition he states in substance that it was his companion and fellow passenger who first saw Plaintiff’s car and exclaimed to him “Stop.” The passenger had been adjusting the radio controls on the dashboard and it was only when he looked up from this distraction when, in his words, they were “proceeding into the intersection,” that he saw Plaintiff’s truck and exclaimed “Stop.” We conclude that Defendant was not keeping a proper lookout under the circumstances or he would have seen the approaching truck before his companion did.
Furthermore, the testimony reveals that Defendant accelerated his speed when he suddenly changed his mind and decided to go through the intersection, rather than make a left turn, as first intended.
From these facts, we conclude that Defendant forfeited the statutory right-of-way, and that his negligence in failing to keep a proper lookout and driving at an excessive speed under the circumstances was the proximate cause of the accident. However, the trial judge acknowledged that the pivotal question was whether Plaintiff was guilty of contributory negligence because he did not look to his right before and after entering the intersection. On this point, he found Plaintiff reached the intersection ahead of Defendant; that he therefore had the right-of-way, and if he had seen Defendant approaching, he would have had the right to assume Defendant would respect his right-of-way and bring his car to a stop. The trial judge concluded:
“It therefore follows that the fact that Graves did not look did not in any way contribute to the accident; that the accident would have happened even if Graves had looked.”
On the basis of the evidence we can find no error in this determination.
Since Defendant’s negligence was clearly proved, the charge of contributory negligence on the part of Plaintiff was a special plea which Defendant insurer had the burden of proving, which burden Defendant insurer failed to sustain.
With regard to quantum, Plaintiff was awarded a total of $10,000.00 in globo; but he proved $1,256.14 for lost wages and $1,104.17 for medical expenses. Therefore the award for pain and suffering must have been $7,639.69. Plaintiff was hospitalized for one month and was unable to work for two months. He suffered a severe cerebral concussion, temporary facial paralysis, fractures of two ribs, multiple facial lacerations, and a severe ear injury. His treating physician, Dr. James S. Webb, testified that Plaintiff was in such extreme pain that he had to undergo special nerve injections; that his permanent injuries include facial scars, which will require plastic surgery, and the partial loss of hearing in one ear. The trial judge indicated that he would have awarded a greater amount for personal injuries if there had been higher policy limits. We find that under the circumstances the award for personal injuries was certainly not excessive.
Defendant contends that the $350.00 property damage was not proven. However, it was Plaintiff’s uncontroverted testimony, not objected to by Defendant, that he purchased his truck for $880.10 approximately six months before the accident; it had a $400.00 value at the time of the accident; that after the accident he sold it for $50.00. We find that the Plaintiff gave a reasonable, fair estimate of his truck’s value and that the $350.00 award for property damage is correct.
For the above reasons, the judgment appealed from is' affirmed; the Hartford Accident and Indemnity Company to pay all costs in both courts.
Judgment affirmed.