**Mrs. Nan Bernice C. THOMAS, Ellward Thomas, Mrs. Dorothy Murrel L. Johnson, Mrs. Joyce Elizabeth G. McFarland, and (Miss) Gloria Steen Lacey**

v.

**The TRAVELERS INSURANCE COMPANY and Ross E. Cox, d/b/a Ross E. Cox, General Contractor.**

**Civ. A. No. 3057.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Sept. 27, 1966.

---

17. See note 9 supra and accompanying text.

Johnnie A. Jones, Baton Rouge, La., for plaintiffs.

David M. Ellison, Jr., Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for defendants.

WEST, District Judge.

█ This suit involves an automobile accident which occurred on Government Street in Baton Rouge, Louisiana, on the night of September 5, 1963. All five plaintiffs joined in the suit against Ross E. Cox, d/b/a Ross E. Cox, General Contractor, and his insurer, the Travelers Insurance Company, claiming damages for personal injuries allegedly sustained by each of them. The jurisdiction of this Court was based solely upon diversity of citizenship, with the allegation that each of the plaintiffs suffered damages in an amount in excess of $10,000. 28 U.S.C.A. § 1332. Prior to trial, both sides waived their right to jury trial, and defendants moved to dismiss all of the claims for lack of jurisdiction on the ground that none of the various claims, as a matter of law, involved amounts in excess of $10,000. The motions were denied and the evidence was heard. At the close of plaintiffs' case, defendants re-urged their motions to dismiss for lack of jurisdictional amount. Counsel for plaintiffs readily admitted, after the introduction of his evidence, that the claims of Gloria S. Lacey, Joyce E. McFarland, and Ellward Thomas did not involve amounts in excess of $10,000, and thus, the Court being of the same opinion, defendants' motion as to these plaintiffs was granted. But counsel for plaintiff still contended, for the record at least, that the claims of Nan Bernice Thomas and Dorothy Murrel Johnson did involve more than $10,000 each. Out of an abundance of caution the Court, at that stage of the proceedings, denied defendants' motion to dismiss as to these plaintiffs, thus requiring defendants to complete the record by introducing their evidence in defense of these claims. Defendants then proceeded to produce their evidence, and at the conclusion of all of the evidence, defendants once again urged their motion to dismiss for lack of jurisdictional amount. The Court then reserved its ruling on this renewed motion and carried the motion with the case on its merits. It is now the opinion of the Court that defendants' motion as to these two remaining plaintiffs, Nan Bernice Thomas and Dorothy Murrel Johnson, must also be granted. Jurisdiction is not a discretionary matter. If in law and in fact jurisdiction is lacking, the case must be dismissed on that ground rather than to be considered on its merits.

This accident happened when the five plaintiffs were riding together in an automobile on a road under construction. The contractor had raised certain manhole covers to the height of the finished road, but the road itself had not yet been built up to the height of the manhole covers. The car in which plaintiffs were riding made a left turn off of South 13th Street onto Government Street in Baton Rouge, where the manhole was located. The car was only traveling about 15 miles per hour when it struck the raised manhole cover, causing the cover to come off, thus allowing a wheel of the automobile to go into the manhole and causing the automobile to come to an abrupt stop. It was this abrupt stop that allegedly shook up the occupants of the automobile, causing the damages complained of. We are here concerned only with the injuries received by the plaintiffs, Nan Bernice Thomas and Dorothy Murrel Johnson.

█ At the outset it must be borne in mind that since this is a case based upon a cause of action allegedly arising under Louisiana law, with jurisdiction in this Court being claimed because of diversity of citizenship, this Court is, of course, bound by the State laws applicable to the case. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. But the determination of the value of

the matter in controversy for purposes of federal jurisdiction is a federal question to be decided under federal standards. Horton v. Liberty Mutual Insurance Co., 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). The federal rule to be used in determining the amount in controversy is stated thusly in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938):

> "The rule for governing dismissal for want of jurisdiction in cases brought in the federal courts is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal * * * But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."

■ And the rule for testing the "legal certainty" of the contention that plaintiff cannot recover a sum sufficient to meet the jurisdictional requirement of the Court is set forth in Barry v. Edmunds, 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729, as follows:

> "It might happen that the judge, on the trial or hearing of a case, would receive impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a personal conviction, however strong, he would not be at liberty to act, unless the facts on which the persuasion is based, when made distinctly to appear on the record, create a legal certainty of the conclusion based on them. Nothing less than this is meant by the statute when it provides that the failure of

its jurisdiction, on this account, 'shall appear to the satisfaction of said circuit court.'"

■ Of course, the burden of supporting jurisdictional facts by competent and preponderant proofs, when challenged by the defendant, is upon the plaintiff. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135. Thus, in order to maintain an action based upon diversity jurisdiction in the federal court, the plaintiff has the burden of proving, by a preponderance of the evidence, that, under federal standards, it is not apparent to a legal certainty that he cannot recover an amount in excess of $10,000. Furthermore, it has been held by the United States Fifth Circuit Court of Appeals that where a claim is made for pain and suffering in a personal injury case, the amount claimed by the plaintiff does not have to be accepted by the Court as the amount in controversy when determining whether or not the Court has jurisdiction. Leehans v. American Employers Insurance Co., 273 F.2d 72 (CA 5, 1959).

With these well established principles in mind, we must look specifically at the respective claims of Nan Bernice Thomas and Dorothy Murrel Johnson.

The evidence in this case shows that Dr. Roy Regan saw Nan Bernice Thomas in the emergency room of the Baton Rouge General Hospital at 10:45 on the night of the accident, September 5, 1963. Her only complaint was of a pain in her breast, and his examination revealed only a "small mild bruise on the breastbone." He found no other injuries and the patient had no other complaints. It was the opinion of Dr. Regan that her complaints would last a week or ten days at most. He also testified that if back or neck pains were to develop from this accident, they would have developed within a day or two, but that any such pains developing weeks after the accident could not possibly be attributed to this accident. Mrs. Thomas testified that after having been seen by Dr. Regan on September 5, 1963, she was not seen again

by a doctor until September 11, 1963, when she was seen by Dr. Dabney M. Ewin in New Orleans, Louisiana. When she was examined on September 11, 1963, by Dr. Ewin, his findings were similar to those of Dr. Regan, i. e., "localized tenderness over the lower sternum and particularly the xiphoid process (breastbone)." His examination of her back and neck was completely negative, with no muscle spasm being noted. He concluded that she should completely recover within two to four weeks. She was next seen by a doctor on September 24, 1963, when she visited Dr. Van Tassell in Berkeley, California. It was at this time that she first complained of soreness in her neck. And it was not until her next visit to Dr. Van Tassell on October 16, 1963, that she complained for the first time of pain in her lower back. On November 19, 1963, she stated that she had recovered, felt much better, and returned to work. This doctor testified that she was not completely over her complaints until January 28, 1964. She never complained to Dr. Van Tassell of any chest pain or discomfort in that area. There is very grave doubt that Mrs. Thomas suffered any injury other than the slight contusion of her breast as a result of this accident, but even giving her the benefit of every doubt, at the very worst she suffered (1) a contusion of the breastbone which was completely healed by September 24, or within nineteen days after the accident; (2) a bruise of the right thigh which had completely healed by September 24, or within nineteen days after the accident; (3) a neck pain which did not commence until September 24 and was completely gone by November 19 at the latest; and (4) a back ache that did not begin until October 16, and lasted until January 28, 1964. She was never hospitalized, and except for her limited complaint of pain, was never disabled in any way. Thus, at the very most, her complaint lasted a maximum of four and one-half months, with all of these complaints according to the doctors who examined her being very

mild indeed. This is the maximum extent of her injuries.

And now, we must examine the injuries allegedly sustained by Dorothy Murrel Johnson. She was first seen by Dr. Roy Regan in the emergency room of the Baton Rouge General Hospital on the night of the accident, September 5, 1963. He found that she had three superficial lacerations of the face which were cleaned and sutured. She was told to have the sutures removed in five days. He found no other injuries. These small cuts were on the bridge of the nose, on the right temple, and the left eye brow. At the time of the trial, while this plaintiff was contending that she had some scars resulting from these cuts, neither the doctor who testified nor I could see any evidence whatsoever of scars remaining from these little cuts. At the time she was seen by Dr. Regan she had no complaint other than the small lacerations mentioned. At the time of the trial she had no complaints referable to the accident. This plaintiff testified that she had been under treatment from the time of the accident until February, 1964, or for a period of five months, for "neck and shoulder pain which the doctor said was tight muscle." But there was no medical testimony introduced to sustain this allegation. Six days after the accident she visited Dr. William Roy, who removed the sutures from the lacerations which he said had "healed well." He found x-rays of the facial bones, cervical spine and lumbar spine to be completely negative, and he was unable to detect any muscle spasm. He concluded that she had "sustained three lacerations—and they have been handled properly at the Baton Rouge General Hospital. I believe she will have little if any cosmetic deformity." He further concluded that at the very most she might have sustained a very mild cervical sprain, from which she would completely recover in two or three weeks, with no residual disability resulting therefrom. During his examination he found a "small reflective error" in one of her eyes, but did not feel that it was in any way related to the

accident. While Mrs. Johnson stated that she had been treated by a Dr. Mary S. Davia, there is no evidence in the record to show the nature of such treatment. Consequently her total injuries must be considered to be those found by Dr. William Roy and Dr. Roy Regan.

These are all of the injuries that were in any way supported by the evidence in this case, and it is from this evidence that the Court must decide whether or not it appears to a legal certainty that the plaintiffs' claims are for amounts less than the jurisdictional amount of $10,000.

At the request of the Court, plaintiff has furnished a memorandum in which he cites four cases upon which he relies to show that these claims are actually made in legal good faith for amounts in excess of $10,000. While the Court is aware of the fact that federal standards must be used in determining the value of a claim for jurisdictional purposes, this principle does not, however, prohibit an inspection of state court cases and the application of state jurisprudence in a diversity case governed by the Erie doctrine. That procedure is, in fact, an application of federal standards because federal law specifically requires the federal court in diversity cases to follow the state law involved. Erie v. Tompkins, supra. And state law certainly concerns itself with the question of quantum just as much as with the question of liability. And furthermore, all of the cases cited by counsel for plaintiff in support of his contention that these claims involve more than $10,000 each are, in fact, state court cases. But all of the cases cited by the plaintiff support the proposition that, to a legal certainty, less than the jurisdictional amount of $10,000 is involved in each of these cases.

In connection with the claim of Mrs. Johnson, plaintiff cites six cases. Of these six cases, three involved awards of $5,000 or less for injuries which plaintiff contends are similar to those of Mrs. Johnson, but which, an inspection of these cases clearly shows, actually involved far greater injuries than those sustained by Mrs. Johnson. In the case of Blackwell v. Travelers Indemnity Co., La. App., 176 So.2d 751 (1965), $5,000 was awarded for facial lacerations, fractured clavicle, and numerous other injuries much more severe than those sustained by Mrs. Johnson. In Williams v. Reinhart, La.App., 155 So.2d 51 (1963), $4,000 was awarded for moderately severe injuries to the cervical region, moderate injuries to the lumbo sacral region of the spine, and the breaking of two of the man's six remaining lower teeth. In Pitre v. State Farm Mutual Insurance Co., La.App., 154 So.2d 772 (1963), the Court awarded $4,500 to a woman who suffered severe and extensive lacerations of the forehead and scalp, resulting in a scar about four inches long and about one-half inch wide across her forehead, radically affecting her appearance. This woman also suffered pain and other lacerations and contusions. These are cases cited to the Court by counsel for plaintiff in support of his claim that Mrs. Johnson's claim, involving much less serious injuries, is worth over $10,000. He also cites three cases, Knotts v. Employers Casualty Co., La. App., 177 So.2d 630 (1965); Castrinos v. City of New Orleans, La.App., 172 So. 2d 357 (1965); and McCorquodale v. Watson, La.App., 170 So.2d 545 (1965), wherein awards of over $10,000 were made. But the injuries involved in those cases are so entirely dissimilar to those of Mrs. Johnson as to make further discussion of those cases unnecessary. They are simply not applicable to the present situation at all. It is obvious that the injuries sustained by Mrs. Johnson do not even approach in magnitude those involved in the cited cases. Thus, all of the authorities cited by plaintiffs' counsel support the conclusion that, to a legal certainty, the claim of Mrs. Johnson does not involve the required jurisdictional amount of over $10,000.

In connection with the claim of Nan Bernice Thomas, plaintiffs' counsel cites nine cases, six of which involved injuries much more extensive and severe than

those incurred by Mrs. Thomas, but in each of which awards of far less than $10,000 were granted. These cases were Davis v. Cooperative Cab Co., La.App., 176 So.2d 148 (1965); Creasman v. Gilpin, La.App., 175 So.2d 879 (1965); Borskey v. Sayes, La.App., 154 So.2d 471 (1963); Gouner v. Wulff, La.App., 174 So.2d 829 (1965); Plaisance v. Maryland Casualty Co., La.App., 169 So.2d 695 (1964); and Fowler v. F. W. Woolworth Co., La.App., 169 So.2d 754 (1964). And again the three cases cited by plaintiff wherein awards of over $10,000 were involved are so dissimilar to the case of Mrs. Thomas as to warrant no further consideration. See Sensat v. Travelers Indemnity Co., La.App., 166 So.2d 316 (1964); Fontenot v. Grain Dealers Mutual Insurance Co., La.App., 170 So.2d 513 (1965); and McCorquodale v. Watson, La.App., 170 So.2d 545 (1965).

On the other hand, the cases are legion wherein injuries such as the two plaintiffs here sustained have resulted in court awards of $3,500 or less. See Davis v. Travelers Indemnity Co., La.App., 165 So.2d 520; McCastle v. Stewart and Stevenson Truck Co., La.App., 147 So.2d 678; Rice v. Traders and General Insurance Co., La.App., 114 So.2d 92; Brown v. Yellow Cab Company of Shreveport, La.App., 94 So.2d 573; Lampkin v. United States Fidelity & Guaranty Company, La.App., 99 So.2d 147; Gay v. United States Fidelity & Guaranty Company, La.App., 76 So.2d 60; Kennison v. Grain Dealers Mutual Insurance Co., La.App., 150 So.2d 657; Ballard v. National Indemnity Company, 246 La. 963, 169 So.2d 64; and Scott v. Hardware Dealers Mutual Insurance Co., La.App., 189 So.2d 29 (1966).

Thus it is apparent to this Court, to a legal certainty, that the required jurisdictional amount of more than $10,000 is not involved in the claims of either Mrs. Johnson or Mrs. Thomas.

Furthermore, aside from all of the controlling jurisprudence cited herein, the Court cannot overlook the fact that this suit originally contained the claims of three other plaintiffs, all of which were,

with the acquiescence of plaintiffs' counsel, dismissed for lack of juridictional amount. And in those cases, which the evidence clearly showed to be claims involving the most minor injuries imaginable, plaintiffs' counsel nevertheless filed suit in this Court for the respective sums of $36,741.56; $18,225.00; and $27,067.00, even though there was absolutely no evidence whatsoever to support claims for anything other than the most nominal kind of damages. When these facts are considered, the legal good faith of the remaining plaintiffs in the suit must be closely scrutinized.

The only items of damages sued for here by these plaintiffs, Mrs. Thomas and Mrs. Johnson, are (1) "pain and suffering, mental anguish and humiliation, past, present and future"; (2) "loss of earnings, past, present and future" and (3) "medical expenses, doctors, drugs, hospital and ambulance service, past, present and future."

The United States Fifth Circuit Court of Appeals has held that where the damages sought are based on pain and suffering, the Court is not required to accept the amount claimed by the plaintiff as being correct for jurisdictional purposes. Leehans v. American Employers Insurance Co., 273 F.2d 72 (CA5 1959). Also, in the present case there was no proof of any loss of earnings or of medical expenses that could be recovered by these plaintiffs. When Congress raised the jurisdictional amount in cases based upon diversity of citizenship, it was for the purpose of keeping just such cases as these out of the federal courts. These claims involved extremely minor injuries which could not possibly, under any circumstances, either under state or federal law, justify awards of any sum even approaching the jurisdictional amount of $10,000, and this Court firmly believes, after considering all of the facts involved, and after hearing the proofs offered, that counsel for the plaintiffs was and is fully cognizant of that fact. Thus, it is the opinion of this Court that the proofs in this case show, to a legal cer-

tainty, that neither the claim of Dorothy Murrel Johnson nor the claim of Nan Bernice Thomas involved an amount in excess of $10,000, and that their respective claims for sums in excess of that amount are not made in legal good faith, but that they are, instead, colorable claims asserted for the purpose of invoking the jurisdiction of this Court. Hence, defendants' motion to dismiss for lack of jurisdictional amount must be granted both as to the case of Dorothy Murrel Johnson and Nan Bernice Thomas.

Judgment will be entered accordingly.