BARNETTE, Judge.
Plaintiffs have appealed from a judgment in favor of plaintiff Howard A. Cou-villion, Sr., individually, in the sum of $4,100.20 for special damages, and in favor of plaintiff Howard A. Couvillion, Sr., as administrator of the estate of his minor son Howard A. Couvillion, Jr., for and on behalf of said minor in the sum of $4,500. Plaintiffs seek an increase in both awards. Defendant has neither appealed nor answered the appeal. Therefore, the only question to be decided is whether there is to be any increase granted to plaintiffs.
After suit was filed, but before trial, the defendant Marquette Casualty Company failed and rehabilitation proceedings were instituted. All proceedings against it were enjoined, and its counsel withdrew from defense of the case. By stipulation of the parties, trial proceeded against the defendant Trist Pharmacy, Inc., only; and the judgment appealed from is against that defendant only.
Howard A. Couvillion, Jr., a 16-year-old high school youth, was severely injured on the evening of May 16, 1964. A truck owned and operated by defendant Trist Pharmacy, Inc., went out of control and struck the youth as he was walking on a sidewalk. Couvillion, after being knocked down and dragged about 25 feet, was pinned partly underneath the truck when it came to rest. He was removed in an unconscious state and rushed to St. Bernard General Hospital.
The youth was given emergency treatment at the hospital by Dr. James C. De-cuers, who stayed with him from arrival at *124 about 11 p. m., until about 3 a. m. Dr. De-cuers testified that the patient was disoriented and could give no history. He testified concerning the examination as follows:
“ * * * On inspection I noticed that he had extensive hematomas from his head almost to his toes on the back, more pronounced on the right side. He had a laceration of the right ear with an evulsion of the lower half, so it was attached by a small segment of the skin by the base. On examination of his chest I noted no particular abnormalities other than the — on examination of his abdomen he had rigidity but no distension. Examination of the extremities other than the previously mentioned hemato-mas were negative. I checked his blood pressure and I noted it was 170/120, and an infusion was running at the time. Examination of his urine revealed red blood cells in his urine which pointed to some injury in the genital-urinary tract. An I. V. Pyelogram was done at that time and I examined the x-rays and interpreted the x-rays as being normal, that there was no evidence of any extravasation of urine in the urogenital tract. X-rays of the chest revealed fracture of 8 rib posteriorly and 9 and 10 rib anter-iorly. On the basis of these findings I made an examination of the cerebral contusion — of the contusions, because of the disturbance in the sensorium and the high-blood pressure. I made a diagnosis of the renal contusion because of the appearance of red blood cells in the urine and the fractures of the 8th, 9th and 10th ribs of the x-rays of the chest. In addition to that the extensive hematomas, contusions and abrasions of his back and right side of the body. Now, during this period I decided to go ahead and take care of his ear, so I cleaned the ear off, I trimmed off roughly the jagged portions of skin and I closed it, I surtured it, all of this was done without anesthesia in the x-ray room. I had them set up the tray right in the x-ray room, I didn’t move him, I watched the boy for about three hours, I was mostly concerned about the — this sustained high-blood pressure which indicated cerebral injury.
“There was no evidence of shock during the period of the examination and the treatment. His sensorium cleared to the point that I could talk to him and he seemed to understand, and about 2:00 or 3:00 o’clock in the morning I left. I also contacted the genital-urinary specialist, Dr. Jacobs to check on him for this blood in the urinary tract. * * * ”
Dr. Decuers later recommended that Mr. Couvillion consult Dr. Louis Krust, a plastic surgeon, for the repair of the young man’s ear and for the removal of the facial scars caused by pigmentation. He then said:
“ * * * I saw this boy again and other than the deformity of the ear and the tattooing and complaint of a mild backache in the mid lumbar region I found no other residual of the injuries of the accident.”
Dr. Emile Bertucci was out of town on the day of plaintiff’s injury, but took over the case upon his return. He confirmed the injuries as reported by Dr. Decuers substantially as quoted above. Dr. Bertucci described with a little more particularity the abrasions, contusions, brush burns, bruises, and disorientation. He minimized the extent of shock. He testified to the administration of pain relieving drugs and tetanus toxoid as a preventive measure. Because of the presence of blood cells in the urine, a catheter was prescribed as a precautionary measure. This remained in place for ten days, since it was evident that the kidney condition was clearing up by that time.
Dr. Bernard L. Jacobs, a kidney specialist, was consulted. He concurred in the diagnosis and agreed that the use of the catheter was a proper precautionary measure. A pyelogram was done which showed a slight deformity in one of the kidneys. This was thought to be possibly from an old *125 infection, but subsequent pyelograms did not reveal this. The kidney condition was described as slight dilatation of the inside of the kidney, which could be caused by trauma or infection.
Young Couvillion was discharged from the hospital on June 2, 1964, and continued under the care and treatment of Dr. Ber-tucci. Dr. Bertucci testified that the rib fractures healed normally with no displacement, Follow-up X rays taken June 16 and July 14, 1964, show further healing. A pyelogram done on July 15, 1964, showed some dilatation still present, but a reevaluation and pyelogram done on June 9, 1965, showed the kidneys had returned to normal. On that date there were no objective symptoms of low back pain of which the youth complained. Dr. Bertucci was of the opinion that the kidneys had healed perfectly and that there would be no permanent damage.
Dr. Jacobs’ report by letter was admitted by stipulation, and we find no variation in the substance of that report with the testimony of Dr. Bertucci. Dr. Jacobs said that when he saw young Couvil-lion the last time, June 14, 1965, his only complaint was of low back pain when he ran. (He was a member of his high school track team.)
Dr. Mannie D. Paine first examined young Couvillion on July 10, 1964, at the request of the insurer. He found evidence of a severe traumatic injury at that time. The injured ear needed plastic surgery, and there was some tenderness in the thoracic cage and the right side of the vertebral column. There was also spasm and tenderness of the dorsal and lumbar musculature. He felt that good progress was indicated. Dr. Paine placed greater emphasis on the ear and facial disfigurement, and recommended corrective surgery. He saw the plaintiff again on April 28, 1965. At that time he saw improvement, but substantially his findings were unchanged. He said: “The patient is making good recovery, but not yet returned to his pre-accident state.” Again he recommended corrective surgery.
The testimony of Dr. Louis Krust (the plastic surgeon) was taken by deposition and admitted in evidence. He examined the plaintiff on May 3, 1965, and described in detail the pigmented facial scars and the injury to the right ear. We think it unnecessary to repeat a detailed description. The testimony, supported by photographs in evidence, leaves no question of the serious disfigurement to the ear and unsightly pigmented facial scars. We are convinced that corrective surgical procedures are necessary.
Dr. Krust said the ear could be restored to a near normal appearance and that most of the pigmented scars could be removed. He gave no assurance of complete success. The recommended surgical procedures would be done under local anesthetic and would require not less than three, possibly four, surgical operations. Three days in the hospital would be required for each procedure.
The cost of this additional surgery would be $1,100 for three operations, and another $150 if the fourth should be required. The hospital expenses were estimated at $200 for each three-day period. Making allowance for some variables he felt $700 would cover the three hospital bills.
After reviewing the testimony of all the doctors, we have no difficulty in arriving at the conclusion that the young man sustained very severe and painful injuries. Fortunately, he has made remarkable recovery. Except for the serious disfigurement of the left ear and unsightly facial scars, there is no residual.
The pain and discomfort suffered were severe for four to six weeks following the accident. Moderate pain continued for approximately six weeks more, diminishing rapidly thereafter. The youth’s only complaint at the time of the trial, except for the disfigurement, was moderate low back pain, especially when he ran. He complain *126 ed, and this was confirmed by his track coach, that his speed was a hit slower since the accident (he ran the mile in track competition). The doctors did not seem to attach any great significance to this complaint, nor to the back pains.
It is our opinion that the award of $4,500 for pain and suffering and disfigurement is inadequate, and should be increased substantially. In this connection we must consider the pain and inconvenience associated with the corrective surgery which is yet to be done. At the same time, we will give due consideration to the probability that corrective surgery will reduce the degree of permanent disfigurement.
The determination of a just award for personal injury is a case by case process. It is never possible to find two situations exactly alike, and we have made no attempt to equate the award in this case with other cases which may have some similar features. However, we have followed the principle set forth in Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964), and Gaspard v. Le-Maire, 245 La. 239, 158 So.2d 149 (1963), by considering other cases to determine if there has been an abuse of judicial discretion.
In McKay v. United Fire & Casualty Company, 192 So.2d 876 (La.App. 4th Cir. 1966), we affirmed an award of $5,000 to a 15-year-old boy for numerous contusions and abrasions over his face and head, and a laceration which pierced his left ear. Emergency surgery was performed in order to suture the wounds. Hospital care lasted six days and treatment extended over a period of seven weeks. The youth was left with facial scars which were less serious than those in the instant case.
In Graves v. Hartford Accident and Indemnity Company, 188 So.2d 173 (La.App. 4th Cir. 1966), we affirmed a judgment of $10,000 of which amount $7,639.69 was for personal injuries'. Plaintiff was hospitalized for one month; he suffered a cerebral concussion, temporary facial paralysis, fractures of two ribs, multiple facial lacerations, a severe ear injury, and facial scars requiring plastic surgery. There was a partial loss of hearing in one ear. The trial judge indicated that the award might have been higher except for insurance policy limits. The injuries sustained by plaintiff here are similar to those sustained in the Graves case, except for the permanent hearing impairment.
A wife was awarded $14,000 for injuries requiring 18 days of hospitalization. She sustained traumatic head injury, slight brain concussion, lacerations of the forehead, hand and knee injury, traumatic chest injuries and bruises, two rib fractures, and injury to the cervical region. Surgery was required to remove a blood clot from her knee. She suffered headaches for some time after the accident and was compelled to use crutches for a period of time. She suffered pain and discomfort to be expected from such injuries. The award was reduced by the appellate court to $10,000. Poirrier v. Audubon Insurance Company, 120 So.2d 90 (La.App. 1st Cir. 1960).
The court held an award of $4,150 for pain and suffering, inconvenience and shock was not excessive. Plaintiff sustained multiple and excessive lacerations of both ears, requiring plastic surgery. He also suffered a compression fracture of the eleventh thoracic vertebra which disabled him approximately 29 weeks, and was required to wear a brace for about six months. There was no evidence of substantial residual. Hargett v. Chemical Service, Inc., 116 So.2d 855 (La.App. 1st Cir. 1959).
A college student was awarded $1,500, increased from $1,000 by the appellate court, for injuries requiring five days in the hospital and an absence of approximately two weeks from his classes. He sustained four fractured ribs and injury to two others. A cut under his chin and numerous bruises and brush burns caused pain and discomfort for about one month. There was no residual. Fontenot v. Southern Farm Bureau *127 Casualty Ins. Co., 105 So.2d 288 (La.App. 1st Cir. 1958).
A 36-year-old tree surgeon was awarded $4,000 for injuries consisting of lacerations of scalp and lip; fractures of three ribs, one in two places with slight displacement of fragments; contusions of the scapulae and left elbow; shock and nervousness. He was disabled for two months. Borskey v. Sayes, 154 So.2d 471 (La.App. 1st Cir. 1963).
The award of $4,500 we think is not supported by the jurisprudence, and there was an abuse of discretion by the trial judge in this respect. We think an award of $7,500 would be proper.
We turn now to a consideration of the appeal for an increase in the award to Howard A. Couvillion, Sr., in his individual capacity. The expense thus far incurred by Mr. Couvillion on behalf of his minor son in the treatment of the injuries sustained is $2,359.20. This includes doctors’ fees, hospital charges and the fees of private duty nurses during the time his son was confined in the hospital. The only item disputed in this total is that for private nurses. It is contended that this was not necessary for the entire time of his hospital care due to his improving condition following the first few days. The nurses were not required by Dr. Bertucci, but he felt it was not unreasonable on the part of the youth’s parents to request them. We therefore find no reason to disallow this item.
The anticipated expense incident to the plastic surgery necessary is a minimum of $1,100 for the surgeon and $600 to $700 for the hospital. This expense will total $1,700 to $1,800. This item ($1,800) plus $2,359.20 amounts to $4,159.20. The judgment for $4,100.20 is therefore a close approximation of this uncertain expense, and the judgment in that respect will not be disturbed.
For the foregoing reasons the judgment in favor of Howard A. Couvillion, Sr., individually, against the defendant Trist Pharmacy, Inc., in the full sum of $4,100.20, is affirmed.
It is further ordered and decreed that the judgment in favor of Howard A. Cou-villion, Sr., as administrator for and on behalf of his minor son Howard A. Couvillion, Jr., against defendant Trist Pharmacy, Inc., is amended and increased to the sum of $7,500, with legal interest thereon from judicial demand until paid, and, as amended, is affirmed.
The defendant-appellee is cast for all costs.
Amended and affirmed.