CHASEZ, Judge.
Danielle M. Hinton and General Guaranty Insurance Company appeal from a judgment rendered against them and in favor of the plaintiff, Emelda Williams Vance and the third-party defendant, Dixie Shoring Co. Inc. The plaintiff recovered the total sum of $2352.38 from the appealing defendants, Miss Hinton and her liability insurer, and the third-party defendant was dismissed from the latters’ demand for indemnity, in the lower Court, for an automobile accident which occurred on June 4, 1964.
The record establishes that the accident occurred at approximately 5:00 P.M. when Mrs. Vance was proceeding on Marengo Street in the City of New Orleans in a direction that may be described as away from the river and towards the lake, (Pontchartrain). Miss Hinton was travelling on South Liberty Street, which intersects Mar-engo Street, in a direction described as towards downtown, or Canal Street. The impact occurred in the intersection proper of these two streets, the cars meeting at right angles, the front of Miss Hinton’s vehicle to the side of that of Mrs. Vance. A Dixie Shoring Co. Inc. truck was parked on Marengo Street near the uptown river corner of South Liberty Street and that company is in this suit by virtue of the defendants’ allegation that the truck was illegally parked in such, a position as to obstruct the view of Miss Hinton and Mrs. Vance, and was thus a proximate cause of the accident.
The trial Court found that Miss Hinton was guilty of negligence, there was no contributory negligence on the part of the plaintiff, and Miss Hinton’s negligence was the cause of the accident. These findings resulted from the Court’s conclusion that the Hinton vehicle skidded 27 feet prior to impact, and the Dixie Shoring Co. Inc. truck was lawfully parked. The defendants complained of these conclusions as erroneous and of the amount awarded in damages as being excessive.
Testifying in Court were the two principals, Mrs. Vance and Miss Hinton; their respective passengers at the occurrence, Mrs. Vance’s 17 year old son, Thomas Levy Vance (14 years old at the time of the collision) ; and Catherine Givens, a friend of Miss Hinton; the investigating police officer, Alfred Theriot, Jr., and Wilfred Brown, a bus driver who witnessed the accident from a block away. Willie Blackburn, who had custody of the parked truck on that day, also testified.
It is established beyond dispute that South Liberty Street was inferior to Maren-go Street in that Marengo was a wider, paved thoroughfare than the narrower, gravelled South Liberty Street. Further, the plaintiff was approaching the intersection to the defendant’s right and thus would ordinarily have the right of way.
Section 38-133 of the Code of Traffic Ordinances for the City of New Orleans, reads as follows:
“The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.
*343 “When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.”

Mrs. Vance was inside of the intersection when the collision occurred, and Miss Hinton did not see anything except for a “streak of white” before she struck the Vance automobile. The intersection was uncontrolled by signs or signals.. Mrs. Vance and her passenger did not see the Hinton car before the impact.
The defendants maintain that Mrs. Vance contributed to or caused the accident in that she did not sufficiently slow down from a 20 miles per hour speed and travelled into the intersection without noticing the Hinton car or hearing it skid, if in fact the car did skid, which they alternatively deny. If the car did not skid, the accident was a result of the illegally parked truck, is the contention.
Although at the trial the plaintiff may have been laboring under the assumption that there had been a “YIELD” sign controlling South Liberty Street traffic, she also testified she slowed down for the intersection, and although she did not see the defendant’s automobile until the impact, she was entitled to rely on her right-of-way to some extent. We fail to see how the plaintiff can be said to have contributed to the accident in this case where she was within the intersection, and was struck at about the midsection of her automobile while she was travelling at a slow rate of speed on the right-hand side of her favored street. That she was on the right-hand side we think is proved by the preponderance of the evidence. Though Catherine Givens testified that Mrs. Vance was in the center of Mar-engo Street and Miss Hinton said the “car seemed as though it was close to the middle of the street”, every other witness, including the investigating police officer, gave testimony to the effect that Mrs. Vance was to the right-hand side of the street, which was wide enough to accommodate four cars abreast.
The investigating officer found 27 feet of skid marks, beginning from the opposite side of the parked truck and travel-ling directly to the spot where Miss Hinton’s car struck the Vance automobile. Although the occupants of the Hinton vehicle denied skidding and Mrs. Vance did not hear any braking, this testimony of the impartial investigating policeman is extremely persuasive. Whether Miss Hinton had stopped prior to crossing the intersection or not is not significant. She apparently did not take proper precaution in crossing, and this was the proximate cause of the accident.
He also testified Miss Hinton told him: “She was travelling downtown on South Liberty Street. As she reached Marengo Street she saw Vehicle One but she attempted to stop, but she couldn’t stop and so she hit it.”
Graves v. Hartford Accident and Indemnity Company, La., 188 So.2d 173 (La.App. 1966) dealing with an analogous situation is authority for the conclusions we have reached:
“ * * * if he had seen Defendant approaching, he would have had the right to assume Defendant would respect his right-of-way and bring his car to a stop.”

“Since Defendant’s negligence was clearly proved, the charge of contributory negligence on the part of Plaintiff was a special plea which Defendant insurer had the burden of proving, which burden Defendant insurer failed to sustain.”
Officer Theriot also undertook to investigate the position of the parked truck, even taking the trouble to retrace Miss Hinton’s route in order to see if visibility was obscured. He found that the car was not illegally parked too close to the comer, *344 and that the vision was not obstructed. He is the only one who had specific knowledge of where the truck was actually parked. Accordingly, Dixie Shoring Co. Inc. was properly absolved of negligence.
On the question of the amount of damages allowed, the complaint is that the medical bills and damage award are grossly excessive for the type of injury received and that she was not entitled to part of the award for expenses in renting a car while her own automobile was being repaired, since she decided to repair damage unrelated to the accident and thus extended the time when the car was in the repair shop.
$1,500.00 was the award for pain and suffering. The doctor’s bill amounted to $355.00, encompassing some 63 visits for heat treatment over a period of about four months. There was no evidence countervailing that of the plaintiff’s doctor, or anything indicating that plaintiff did not receive the treatment, at $5.00 a visit, in the record. Furthermore, an award for $1,500.-00 for bruises and laceration about the left arm and wrist which required treatment for some four months and which still manifests residual symptoms is not manifestly excessive in our opinion.
As to the car rental, it is true that the plaintiff's automobile was tied up for about a month and that she also commissioned the repair of other damage. However, there was evidence to support the lower court’s finding that the delay was not due to other repairs but to the delay in obtaining parts required to repair the damage caused by the accident sued upon here.. The plaintiff’s testimony in this regard was not effectively controverted by the defendant. There being no manifest error, the judgment below is affirmed, costs to be borne by Danielle Hinton and General Guaranty Insurance Company.
Affirmed.